RICHARD F. CONWAY, Appellee, *vs.* THE CITY OF CHICAGO, Appellant.

*Opinion filed December 15, 1908.*

1. MUNICIPAL CORPORATIONS—*liability of city for money due a contractor for local improvement.* A city is liable in an action of assumpsit by a contractor for a local improvement constructed by special assessment if there is a balance due the contractor and the city has collected the special assessment but has not paid it ·over; but if the city has neglected or refused to collect the assessment the contractor's remedy is *mandamus* and not assumpsit.

2. SAME—*a city is liable for money diverted from assessment fund.* The money collected by a special assessment is a trust fund to pay for the particular improvement, and the city has no right to transfer arbitrary amounts from such fund to other funds and

draw on them indiscriminately for the pay-roll of the special assessment department without regard to the expense incurred for the particular improvement, and it is liable in assumpsit to the contractor for the money so collected and diverted.

3. SAME—*city is not liable in assumpsit for money it has not collected.* If a city in good faith but under a mistaken view of the law attempts to reduce the assessment as to certain property by issuing rebate certificates and delivering them to the collector to credit on the assessment and return the certificates as cash, the contractor's remedy as to the amount of such rebates is *mandamus* and not assumpsit, as there has been no collection of the money by the city.

4. SAME—*when a contractor is not entitled to interest at rate named in bonds.* The fact that the unpaid bonds held by a contractor for a local improvement bear six per cent interest does not entitle him to recover that rate of interest in an action of assumpsit against the city for money collected by the city on the special assessment and wrongfully diverted to other purposes, but he is entitled to recover interest at the legal rate as for money lawfully obtained by the city but unlawfully withheld.

5. SAME—*time from which interest is recoverable from city by contractor.* In assumpsit by a contractor to recover from a city the amount of the special assessment fund diverted by the city from its purpose, interest is recoverable from the time when the contractor first became entitled to demand the money in payment of his bonds, and not from some previous time when the city transferred the assessment fund on its books.

6. SAME—*city is not liable for delinquent special assessments.* A city is not liable to the contractor for the amount of delinquent special assessments where it has performed its full duty under the law and the contract by perfecting the tax titles as to the delinquent property and tendering the deeds to the contractor.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. GEORGE A. CARPENTER, Judge, presiding.

This is an action of assumpsit brought by Richard F. Conway against the city of Chicago to recover the balance due on special assessment bonds issued in payment of the cost of paving certain streets in Chicago, known as the St. Lawrence avenue system. The declaration consisted

237—9

only of the common counts, to which the city of Chicago pleaded the general issue. By agreement a jury was waived and the cause submitted to the circuit court upon a stipulation of facts. The circuit court found in favor of the plaintiff and assessed the damages at $20,176.17. From a judgment for this amount against it the city of Chicago prosecuted an appeal to the Appellate Court for the First District. The Appellate Court reversed the judgment of the circuit court and entered a judgment against the city for $18,475. From this judgment the city of Chicago has prosecuted a further appeal to this court.

The Appellate Court disagreed with the trial court as to the amount appellee was entitled to recover and made an order requiring a *remittitur* to be entered, whereupon appellant made a motion, which was assented to by appellee, that the Appellate Court set aside its first order and enter final judgment for the amount of $18,475. This course was adopted in order to facilitate an appeal to this court, and it was stipulated that it was to be without prejudice to the rights of the parties to assign errors in this court.

The facts necessary to an understanding of the questions that are open for consideration in this court, as the same appear from the stipulation of the parties, are as follows:

On June 16, 1896, the city council of Chicago passed an ordinance for the paving of a system of streets, known as the St. Lawrence avenue system, to be paid for by special assessment. A special assessment was confirmed by the county court of Cook county, except as to the property objected for, on the basis of the estimated cost of said improvement, in the sum of $148,000, and on July 26, 1896, an assessment of $115,924.57 was duly certified for collection. Appellee became the contractor, and in due time constructed the improvement in accordance with the ordinance, contract and specifications and to the satisfaction of the city authorities. Under appellee's contract he was entitled to receive $104,162.65, payable out of the proceeds of special

assessments to be levied to defray the cost of the improvement. The city proceeded to collect the assessment and has collected $136,545.53, of which $32,382.88 was the interest, and has made sundry payments to appellee on account of his contract, still leaving a balance due, on account of principal, of $2865. The city has on hand a balance of $979.97 of the assessment, which it is admitted ought to be applied on appellee's claim.

The stipulation further shows that on December 31, 1896, out of the money which the city collected from the property owners on said special assessment, as aforesaid, the city, by its then officers in charge of the administration of special assessments, transferred from said special assessment fund, "warrant 22,344," the sum of $4353.77, which the city claimed for the cost of engineering and superintendence and the cost of making and collecting said assessment, to another fund known as "Fund W." The actual cost of inspection of said improvement, $2453.50, was also transferred to "Fund W," making an aggregate of $6807.27 so transferred. Said sum of $6807.27, together with six per cent of the estimated cost of all other improvements made by special assessments during the year 1896, and several years prior and subsequent to said year, were merged into "Fund W" and together constituted a single fund, from which were paid the pay-rolls of the special assessment department of the city of Chicago, including the pay-roll of all inspectors and engineers, as well as the accountants, administrative officers and all other employees of said department, including the expenses of making and collecting the assessments. No account was kept of the expense of making or collecting any particular special assessment, nor of the actual cost of the engineering and superintendence of any particular special assessment. It cannot now be ascertained what was the expense of the city of Chicago of the engineering and superintendence, making and collecting the special assessment above referred

to, nor of any other particular special assessment. The amounts thus transferred in the aggregate to "Fund W" were more than the total cost of administration of the special assessment department, and the balance of the said "Fund W" was again transferred to the general fund of the city of Chicago and used for general corporate purposes.

It is also stipulated that on December 31, 1896, the city, by its then officers, also transferred from said special assessment fund the sum of $3072.82 and credited the same to the account of the sewer department, and used said sum of money, together with other similar sums transferred from other special assessment funds, in the payment of the expenses of said sewer department, without keeping any account of the particular amounts expended by the said sewer department on the separate and particular special assessment improvements. The work done by the sewer department consisted in constructing catch-basins and connecting the same with the openings in the gutters of the streets so improved and with the sewers in said streets underneath said pavements, so as to provide for taking care of the surface waters on said streets, but the special assessment ordinance in the case in question contained no provision for the construction or adjustment of sewers and catch-basins and did not describe and refer to the same as a portion of said improvement.

The stipulation further shows that during the year 1897 appellant voluntarily made abatements to property owners assessed for the improvement under the following circumstances: "After the special assessment had been confirmed by the order and judgment of the county court of Cook county, and the amount of the benefits and of the proportionate cost of the improvement to each particular lot fronting upon the said improvement had been ascertained and confirmed by the court, the city of Chicago, by its then officers, undertook to ascertain the actual expense of constructing the pavement in front of each particular lot, and

where it appeared that by reason of the physical condition of the property a less amount of filling and grading was necessary for one lot than for another, or for any reason the cost of improvement in front of a particular lot was less than the amount assessed against it, the city of Chicago issued an abatement certificate to such property owner for the amount so ascertained and delivered the same to the county treasurer, to which officer the said assessment had then been certified for collection according to law, and directed him not to collect said amount from said property owner but to credit the account of said property owner with the amount of said certificate mentioned as 'paid by the city of Chicago,' and directed him, after thus crediting said abatement certificates and collecting the balance, to turn in said certificates to the city, on final accounting of the collection, as so much money collected. This was done after the contract for said improvement had been awarded and signed and while the improvement aforesaid was in process of construction, and without any order of court or any judicial proceeding to determine whether the amount previously adjudicated by the court as the amount of benefits and the proportionate cost of the improvement for each particular lot was excessive, and without any proceeding to charge to the other lot owners an equivalent amount. This action of the city was taken in good faith and without any fraud on the part of its officers, and in compliance with a theory of the law then entertained by them that an assessment should be spread and collected on the front ·foot basis,— that is to say, according to the actual cost of constructing the improvement in front of each particular lot. The aggregate of the said abatements so made is $5251.18." Appellee claims that appellant had no legal right to make these abatements, and that it is consequently liable to him for the amount of such abatements, together with interest thereon.

It further appears that certain property assessed in the original proceeding, amounting to $902.39, was struck off

to the city at the tax sale by the collector, there being no other bidders, and that the tax deeds which were subsequently issued to the city for these lots have been tendered to appellee as payment on the account for the face value of the tax certificates but have been refused by appellee. It was further stipulated between the parties that this case merely involves appellee's claim against appellant on account of the three sums above mentioned and the interest thereon, and is not intended to affect any other rights or causes of action which appellee may have or become entitled to.

The contract under which appellee constructed the improvement provided, among other things, as follows: "The said city of Chicago hereby covenants and agrees, in consideration of the covenants and agreements in this contract specified to be kept and performed by the said party of the first part, to pay to said party of the first part, when this contract shall be wholly carried out and completed on the part of said contractor and when said work shall have been accepted by said commissioner of public works, and when also the special assessment or assessments levied or to be levied for the same shall be collected, in installments, in accordance with the act of the General Assembly of the State of Illinois entitled 'An act to amend article 9 of an act entitled 'An act to provide for the incorporation of cities and villages,' approved April 10, 1872, in force July 1, 1872.' * * * In case the city of Chicago should become the purchaser of any special assessment certificate at any sale for the delinquent special assessments, in default of other bidders, such purchase shall not be deemed a collection of such special assessment, and no act of the city done or suffered shall be construed as a collection of any special assessment, or part thereof, until the money due thereon shall be actually paid into the city treasury. * * * The said party of the first part agreeing hereby to make no claim against said city, in any event, except from the collections

of the special assessment made or to be made for said improvement, and to take all risks of the invalidity of special assessments, or any of them, or of the proceedings therein, or for failure to collect the same."

GEORGE A. MASON, and LYMAN, LYMAN & O'CONNOR, (EDWARD J. BRUNDAGE, Corporation Counsel, of counsel,) for appellant.

TOLMAN, REDFIELD & SEXTON, for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

*First*—By exceptions preserved to the refusal of the court to hold certain propositions of law, appellant has preserved the question of the liability of the city for three items which constitute a part of appellee's claim. The improvement having been projected by the city as an improvement to be paid for by special assessment, the city is not liable, generally, for any unpaid balance due the contractor. The liability of the city, both under the law and under the contract with appellee, is limited to the amount of the special assessments actually collected for this improvement and which have not been paid over to appellee. (*City of Alton v. Foster*, 207 Ill. 150.) If the city neglects or refuses to discharge any of the duties required of it in connection with the levying and collection of special assessments provided for by the ordinance under which the improvement is constructed, the remedy of persons entitled to have such assessment levied and collected is by a *mandamus* to compel the performance of such duties. (*People v. City of Pontiac*, 185 Ill. 437.) Where the special assessment has been levied and collected by the city and nothing remains to be done except to pay it to the party entitled to it, assumpsit is a proper remedy to compel the city to pay it over.

The stipulation shows that appellant collected $4353.77 of this assessment which was transferred to "Fund W" and

$3072.82 which ·was placed to the credit of the sewer department. This the city had no legal right to do. The funds collected from this special assessment constituted a trust fund to pay for the improvement, and the city had no right to transfer them to other funds and draw on them indiscriminately for pay-rolls of inspectors, engineers, accountants and other officers and employees of the special assessment department, without regard to the improvement with respect to which such services were rendered or expenses incurred. Even if appellant might properly pay out of these funds the necessary expenses for inspection and engineering incurred in connection with this improvement, it could not appropriate for this purpose more of such assessment than was necessary for such purpose. Under the system of creating one fund for inspection and engineering. and another for sewer department, and arbitrarily taking from each local improvement an amount estimated to be its proper contribution to such funds, it is apparent that no one could tell, even approximately, whether any particular improvement was bearing more or less of its just share of such expenses. Appellant having thus wrongfully diverted these amounts is liable therefor in this action.

The questions whether appellant is liable for interest upon these amounts, and if so, at what rate, and the time from which such interest shall be computed, are questions properly submitted for our determination. Appellee insists that he is entitled to interest at the rate of six per cent from December 31, 1896, which is the day on which appellant transferred these funds from the special assessment fund to other funds held by appellant, for other purposes than the payment of the obligation incurred by this improvement. The bonds issued to appellee in payment for this improvement, and which remain unpaid, bear six per cent interest, and it is upon this fact that appellee bases his claim to recover that rate of interest in this suit. Appellant contends

that it is not liable for any interest, and if liable at all, that it is only liable at the rate of five per cent, to be computed from the time when there was a default, at maturity, of the bonds to pay them. The circuit court sustained appellee's contention on this point, and allowed interest at six per cent from the date when the transfer of the funds occurred,— a period of ten years. The Appellate Court disagreed with the trial court, and allowed interest at five per cent from the time when appellee became entitled, under his bonds, to demand the payment of these funds to him. Upon this question we think that the view of the Appellate Court is correct. While appellee's ownership of past-due bonds issued in anticipation of this special assessment is a necessary element in his right to recover in this case, still this is not a suit upon the bonds in the sense that the recovery must be according to the tenor and effect of the instruments, but it is essentially a suit against the city for money had and received to the use of appellee which in good conscience ought to be paid to him. The rate of interest, therefore, which appellant is liable for, is that fixed by the statute, and not the contract rate specified in the bonds. Appellee is undoubtedly entitled to the rate mentioned in the bonds as against the special assessments levied or to be levied to pay such bonds, but the general liability of appellant to pay interest does not arise out of the contract, but out of the unlawful withholding of these funds after they were collected by the city. The general rule as to the liability of municipalities is, that they are not liable on their contracts for interest in the absence of an express agreement to pay it, yet where money is wrongfully obtained, or where it is lawfully obtained and unlawfully and wrongfully withheld, the municipality is liable for interest to the same extent as a private person. (*Vider* v. *City of Chicago,* 164 Ill. 354; *City of Danville* v. *Danville Water Co.* 180 id. 235; *City of Chicago* v. *Northwestern Mutual Life Ins. Co.* 218 id. 40.) Appellant transferred these funds on its books December

31, 1896, but on that date appellee was not entitled to receive the same, for the reason that at that time he held no bonds that were due.   The transfer of the funds by the appellant was at that time a mere matter of harmless book-keeping, so far as appellee was concerned.   If appellant had restored these funds to the special assessment fund on the day that appellee's obligations matured, so that the funds would have been on hand ready to meet his obligation, it can hardly be said that the mere fact that appellant had previously, through a misapprehension of the law, allowed the fund to rest in another account, ought to make appellant liable to appellee for interest.   We think that appellee's right to demand interest of appellant accrued when he became entitled to demand and receive the funds under his bonds, which was a period some months later than the date upon which appellant transferred the funds upon its books.   Upon this basis the amount that appellee is entitled to recover on account of the two items now under consideration is $10,071.71.

*Second*—The next item in appellee's claim is $5251.18, which was rebated to the property owners under the circumstances set out in the statement preceding this opinion. Both the circuit and Appellate Courts held that the appellant was liable for these rebates, with interest thereon.   It must be borne in mind that the amount of these rebates never, in fact, came into the hands of the city.   Through a misapprehension as to the legal basis upon which the special assessment should have been levied these rebates were left with the tax-payers.   If appellant is required to pay appellee these rebates, the effect of it will be to establish a general liability against the city for the mere neglect, default or mistake of its officers in regard to the levying and collecting of a special assessment.   It is true that appellant had no legal right to make such rebates, and all orders and proceedings purporting to authorize such rebates were null and void.   Being mere nullities they could not have been in-

terposed as a defense to an application for a *mandamus* to compel the collection of the full amount of the special assessment. Appellee's remedy, in so far as the amount of these rebates is concerned, is by *mandamus* to compel the performance of whatever legal duties appellant is under in connection with the collection of these rebates from the taxpayers. It is suggested that difficulties arising out of the lapse of time will prevent the collection of the original assessment or the levying of a supplemental assessment covering these rebates. However this may be, we are not inclined to extend the general liability of a municipality for special assessments beyond that which results from a failure to pay over money actually collected by it. These rebates never having come into the hands of the city in cash, it is not liable in an action of assumpsit for them, on the theory that by the exercise of due diligence in the discharge of its legal duties it ought to have collected them.

*Third*—The city discharged its full duty, under the contract and under the law, when it perfected the tax titles to such lots as were delinquent and tendered the deeds obtained on tax sales to appellee. It is not liable to appellee for the amount of these delinquent special assessments.

The Appellate Court properly disposed of the appellant's contention that the judgment below exceeded the *ad damnum* of the declaration. Under the stipulation no objection for want of a proper pleading by either party can now be raised.

All the facts in this case are before the court, and no reason exists for remanding the cause. The judgment of the Appellate Court will therefore be reversed and a judgment entered in this court for the amount due, which is $11,051.68, to which should be added five per cent interest from February 4, 1907, the date on which the judgment was entered in the circuit court, to the date on which this judgment is entered.

*Judgment reversed and judgment in this court.*