## Michael Donohue, for use of Harry E. Weese, Appellee, v. Village of La Grange, Appellant.

### Gen. No. 18,342.

1. MUNICIPAL CORPORATIONS, § 403*—*when costs of an improvement cannot be paid out of general funds.* Under a statute making it the duty of a village to levy and collect a special assessment to defray the cost of making an improvement described in the ordinance and contract, the performance of that duty may be compelled by mandamus, but there is no liability on the part of the village to pay such cost out of its general funds in case of any deficiency in the special assessment funds.

2. MUNICIPAL CORPORATIONS, § 404*—*retroactive effect of section 86 of Local Improvement Act.* Section 86 of the Local Improvement Act as amended in 1901, J. & A., ¶ 1479, which provides that if from any cause an instalment against which a special assessment bond is issued has not sufficient money to its credit to pay the bond, the whole assessment, or any instalment thereof, may be applied towards such payment, *held* not to apply to assessments levied and bonds issued under prior acts.

3. MUNICIPAL CORPORATIONS, § 404*—*when not liable for failure to collect delinquent special assessments in cash.* A village cannot be made liable to pay out of other instalments special assessment improvement bonds issued against delinquent assessment instalments merely because of its failure to collect in cash the amount of such delinquent instalments. The village performs its full duty in the collection of delinquent assessments when it receives and tenders the tax titles obtained by it.

4. MUNICIPAL CORPORATIONS, § 404*—*when liable for diverting special assessment funds.* Where a village wrongfully diverts any of a special assessment fund, or uses it to pay claims not legally

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

chargeable against the fund, the village is liable in *assumpsit*, to the extent of such wrongful use or payments, to the person to whom the moneys so used were rightfully due.

5. MUNICIPAL CORPORATIONS, § 404*—*when liability of village on improvement contract becomes merged in improvement bonds.* Where a contractor for a village improvement accepts in full payment of his demand for work under his contract special assessment improvement bonds payable solely out of certain specific instalments of the assessments when collected, the liability of the village upon the contract becomes merged in the specific liability evidenced by the bonds.

Appeal from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1912. Reversed and judgment here. Opinion filed November 20, 1913.

FREDERIC L. GOFF, for appellant; LYMAN, LYMAN & O'CONNOR, of counsel.

TOLMAN & REDFIELD, for appellee.

MR. JUSTICE FITCH delivered the opinion of the court.

This is an appeal from a judgment for $2,275.26 rendered in an *assumpsit* suit brought by appellee against the Village of La Grange upon certain special assessment improvement bonds. The case was tried by the court without a jury upon stipulations as to the facts. From these stipulations it appears that in June, 1895, the Village of La Grange passed an ordinance providing for the construction of a system of sewers in divers streets of the Village, the cost thereof to be paid for by a special assessment to be levied in accordance with the provisions of the statutes then in force; that a petition for the levy of such an assessment was filed in the County Court of Cook county and an assessment levied and confirmed for $20,510, payable in ten instalments, the first instalment being being $3,500 and the remainder $1,890 each; that a contract for the doing of the work described in the ordinance was then let to Michael Donohue at a price not

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

stated in the stipulations; that "said contract provided for the issuance of bonds by the Village to the plaintiff," such bonds to conform to the requirements of the Act of June 17, 1893; that Donohue completed the construction of the improvement in due time, in accordance with the ordinance and to the satisfaction of the Village authorities, "whereupon vouchers, payable out of the first instalment without interest, amounting to $1,567.21, and special assessment bonds, bearing interest at the rate of six per cent. per annum, payable out of the second and subsequent instalments of the assessment, amounting to $7,200, were delivered to the plaintiff in payment of the balance due on said contract;" that each of the bonds so delivered to the contractor recites on its face that it is issued to anticipate the collection of a specified instalment of the assessment, and also states that "this bond and the interest thereon are payable solely out of said instalment when collected;" that the Village proceeded to collect the special assessment and "collected sums of money" (the amount not stated) "all of which it has paid out except $43.90;" that all of the vouchers issued to the contractor have been paid and that of the bonds delivered to the plaintiff, bonds amounting to $3,500, face value, have been paid; that of the bonds remaining unpaid, "the plaintiff" holds bonds to the amount of $3,100, face value, which by their terms are payable solely out of the fifth, sixth, seventh, ninth and tenth instalments of the assessment, and that the remaining $6000, face value, of bonds, which are payable out of the eighth instalment, are held by persons unknown; that only sixty per cent. of the second, third and fourth instalments was collected because of a resolution adopted in November, 1896, by the Board of Trustees of the Village, directing a rebate or reduction of forty per cent. of the assessment to be made; that in pursuance of the same resolution, wherever property owners had paid the second and succeeding instalments in advance, a cash rebate of forty per cent. was paid to them, the

total of such cash payments amounting to $307.20; that in June, 1900, the Board of Trustees repealed the resolution providing for such rebate, and the fifth and succeeding instalments were put in collection for the full amount thereof; that "only a small portion" of the fifth instalment was paid when due; that the remainder was returned as delinquent and when the property assessed was offered for sale by the County Collector of Cook county at the ensuing tax sale for nonpayment of the fifth instalment, it was bid in by the Village in default of other bidders and certificates of sale were issued to it; that in December, 1902, a tax deed was obtained from the county clerk conveying to the Village the lots thus bid in by it, which deed was duly recorded and is now held by the Village; that none of the subsequent instalments of the special assessment against such lots were paid and each of such instalments was returned delinquent, and the lots were again offered for sale by the county treasurer and for want of bidders were "stricken off" to the Village and certificates of sale issued to it; that "more than $12,000 of such assessment is represented by said tax certificates;" that the Village has tendered to the plaintiff proper deeds conveying to him a part of the property described in its tax deed, and certificates of sale covering the same property, representing more than $5,000 of the amount of such tax sales, and has also offered to pay the plaintiff the $43.90 remaining in its hands.

It was also stipulated that all of the money collected by the Village on account of said assessment was properly paid out and expended except certain specified items, amounting to $1,612.88, all of which items the plaintiff claims were improperly paid out of the assessment fund. Of the amounts thus specified, $202.09 were paid out of the instalments named in the bonds held by the plaintiff, and the remainder was paid out of other instalments. Sundry propositions of law were submitted to the court and marked "held" or

"refused," from which it appears that the court held, as a matter of law, that while each "instalment of a special assessment is a separate trust fund for the payment of vouchers and bonds legally issued against that instalment," yet "after the vouchers and bonds issued against that instalment are paid, any amount collected on account of such instalment in excess of the sums legally disbursed out of the funds in the same, is applicable to the payment of the legal obligations against subsequent instalments of the same assessment." Upon the theory thus stated and held to be the law applicable to the facts of this case, the trial court found that all but two of the disputed items were not legally chargeable against the special assessment fund and were wrongfully paid out of the same, and held the Village liable to the plaintiff for the full amount of such disbursements, whether the amounts thus disbursed were taken from the instalments against which the plaintiff's bonds were issued, or not.

The statutes regarding the making of local improvements by special assessment, which were in force at the time the contract with Michael Donohue was entered into, made it the duty of the Village of La Grange to levy and collect a special assessment to defray the cost of making the improvement described in the ordinance and contract, and the performance of that duty could have been compelled by mandamus. *People v. City of Pontiac,* 185 Ill. 437. But none of such statutes imposed upon the Village any general liability to pay such cost at all events, i. e., any liability to pay such cost out of its general funds in case of any deficiency in the special assessment funds. On the contrary, its liability, both under the law and under the contract, was and is limited to the amount actually collected upon the special assessment. *City of Alton v. Foster,* 207 Ill. 150. If, however, the Village wrongfully diverted any of the special fund, or used it to pay claims not legally chargeable against the fund, then the Village is liable in *assumpsit* to the ex-

tent of such wrongful use or payments, to the person to whom the moneys so used were rightfully due. *Conway v. City of Chicago,* 237 Ill. 128. As to that part of the special assessment which was not, in fact, collected but was returned to the county collector as delinquent, the Village performed its full duty when it received and tendered to appellee the tax titles obtained by it, and was not therefore liable to appellee in *assumpsit* for the amount of such delinquent assessments. *Conway v. City of Chicago, supra.* These general principles are not disputed, and the main question here involved is whether the trial court correctly applied them to the facts of this case.

In the *Conway* case, *supra,* the Supreme Court applied the principles above stated to facts which were in many respects similar to the facts in this case, and gave judgment against the municipality for all amounts which were actually collected and afterwards wrongfully diverted from the special assessment fund. This conclusion, however, as the opinion in that case shows, was based upon findings of fact to the effect that the moneys so diverted by the municipality, after its receipt of the same, had been in fact received by it "to the use of appellee" (Conway) and, therefore, equitably belonged *to him.* So far as appears from the opinion, no contention or claim to the contrary was made in that case. The action there, as it is here, was for money had and received by the defendant to the use of the plaintiff. It is always necessary, in such an action, to show that the money claimed rightfully belongs *to the plaintiff* (*Wilson v. Turner,* 164 Ill. 398, 403); and that fact being conceded in the *Conway* case, *supra,* the judgment in that case necessarily followed upon proof of the receipt of the money by the defendant and the subsequent wrongful diversion thereof. In this case, the nominal plaintiff is the contractor. The real plaintiff (the usee) is the holder of some of the outstanding bonds. The contract provided for the issuance of these bonds, and they were in fact issued, in ac-

cordance with the provisions of the Act of June 17, 1893. (1 Starr & Curtis Stat. 855, J. & A. ¶¶1993 et seq.) Section 2 (J. & A. ¶ 1994) of that act gives the form of the bonds, and provides that "said bonds may be *sold or paid* to the contractor   *   *   *   at not less than their par value." By the express terms of the stipulation of facts, the plaintiff's bonds, with others, "were delivered to the plaintiff *in payment of the balance due* on said contract." The contract was then fully performed on both sides, according to its terms. In full payment of his demand for work done under his contract, the contractor received and accepted obligations of the Village to pay "to the bearer" specific amounts at specified dates, with interest, but payable "solely" out of certain specified instalments of the assessment, when collected. The liability of the Village upon the contract, as such, was thereby merged in the specific liability evidenced by the bonds. In legal effect, the contractor thereby released and waived all claim to any part of the proceeds of other instalments, and thereafter the Village was accountable *to him* only for the proceeds of the instalments specified in the bonds so delivered to and accepted by him. The proceeds of the instalments so specified were the only moneys which could be said, in any legal sense, to "belong" to him. The only duty the Village thereafter owed to the legal holder of such bonds was to do all it might lawfully do to collect the instalments specified in his bonds and pay over the amounts thus collected when due by the terms of the bonds. To the extent that it failed in that duty by making illegal payments (if they were illegal) out of moneys collected upon such instalments, the Village became liable to the legal holder of the bonds as the equitable owners of the moneys so collected; but only to that extent. The stipulations recite that "only a small part" of the instalments named in the plaintiff's bonds has been collected in money. The remainder is represented by tax certificates and tax deeds, which have been tendered

to him in amounts more than sufficient to cover the amount due upon his bonds. It is also stipulated that all except $202.09 of the moneys collected upon the instalments named in his bonds was properly expended. The utmost, therefore, that the plaintiff can recover in this action is $202.09, with interest at five per cent. from the time appellee became entitled, under the terms of his bonds, to demand and receive the payment of that sum. *Conway v. City of Chicago, supra.*

We are unable to find any warrant or authority in the statutes which were in force at the time appellee's bonds were issued, or in any of the reported decisions in this State, for the claim that because a large part of the instalments out of which appellee's bonds were payable was not paid by the property owners but was returned delinquent and is now represented by tax titles covering the delinquent property assessed, therefore, appellee may require the Village to account to him in this action for the proceeds of other instalments against which he waived all claim over eighteen years ago. In our opinion, the moneys collected upon other instalments are trust funds in which he has no interest whatever. It was not the fault of appellant that its efforts to collect the instalments out of which appellee's bonds are payable resulted in collecting tax titles instead of money. Nor were the property owners whose money was collected upon the first four instalments responsible for that result. The money thus collected was charged with the payment of the bonds and vouchers legally issued against the same, and all such bonds and vouchers have been paid out of the fund so charged. The surplus remaining in those instalments equitably belongs to the property owners who paid such instalments. To now hold that such surplus may be used to pay the bonds of appellee, merely because a large part of the instalments against which his bonds were issued was not paid to the Village in money, but in tax titles which the Village was obliged to take, would be equivalent to holding that the money of those who pay their

special assessments may be charged, not only with the payment of their fair proportion of the cost of the improvement, but with the delinquency of all those who fail to pay anything towards such cost. If the Village performed its full duty with reference to the collection of the delinquent assessments when it tendered the tax titles to appellee, and is not liable to him for the amount of such delinquent assessments, as was held, on similar facts, in the *Conway* case, *supra*, then it would seem to follow naturally and logically that the Village cannot be made liable to pay bonds issued against delinquent instalments out of other instalments merely because of the failure on its part to collect in cash the amount of such delinquent instalments. Especially is this true when, by the express terms of the bonds, they are payable solely out of such delinquent instalments when collected.

It is true that there is a provision in section 86 of the Local Improvement Act of 1897, as amended in 1901 (J. & A. ¶ 1479), to the effect that if from any cause an instalment against which a bond is issued "has not sufficient money to the credit thereof to pay the same," then the whole assessment, or any instalment thereof, "may be applied" towards such payment. But such provision of the statute had not been enacted when appellee's bonds were issued, nor was it the law when the alleged improper payments were made. Section 86 of the Local Improvement Act, as adopted in 1897, did not contain this provision. It first appeared in the amendments of 1901. The rights of the parties were fixed, therefore, long before the provision of the present statute above mentioned was in force. We are unable to agree with the contention of appellee's counsel that this amendatory provision is merely declaratory of the purport and effect of the original Act of June 17, 1893. There is no language in that act which supports that theory, and the fact that the Legislature deemed it necessary in 1901 to add the provision mentioned is some evidence, at least,

to the contrary.  The provision in the Act of 1893, requiring the bonds to recite that they are payable *solely* out of a specified instalment when collected, is equivalent to an express statement that the liability of the municipality thereon is limited to the collections upon the instalment so specified.  A similar conclusion on this point was reached by this court in *Barber Asphalt Paving Co. v. City of Chicago,* 139 Ill. App. 129, 131.

It follows from what has been said above that in our opinion the trial court erred in applying the proposition of law above quoted to the facts of this case.  As a general abstract proposition of law it is correct when applied to assessments levied under the present Local Improvement Act and to bonds issued under section 86 of that act as amended in 1901.  But it has no application to assessments levied and bonds issued under prior acts.  For this reason, the judgment of the Circuit Court must be reversed.  The case having been tried by the court on a stipulation of facts, it will not be remanded, however, but judgment will be entered in this court in favor of appellee and against appellant for $307.10, being the amount, with interest, admitted to have been wrongfully disbursed out of the moneys collected upon the fifth, sixth, seventh, ninth and tenth instalments.

*Reversed and judgment here.*