MICHAEL DONAHUE, Plaintiff in Error, *vs.* THE VILLAGE OF LAGRANGE, Defendant in Error.

*Opinion filed June 16, 1914.*

1. SPECIAL ASSESSMENTS—*contractor entitled to balance of first installment after costs are paid.* Under section 63 of the Local Improvement act of 1887, as amended in 1891, the contractor is entitled to all the balance of the first installment after the costs of making the assessment are deducted, but if he elects to take bonds of the village instead he thereby releases his right to the money, and both he and his assignee must look to the respective installments against which the bonds are issued.

2. SAME—*a contractor holding bonds must look to installments against which they are issued.* A contractor for a local improvement who accepts bonds of the village issued against the respective installments of the assessment must look to the collection of the respective installments for his money, and the liability of the village is limited to the amounts actually collected and paid in on such installments.

3. SAME—*when village is not liable for delinquent assessments.* Where a village has in good faith endeavored to collect the respective installments of a special assessment against which bonds are issued and held by the contractor or his assignee but has been unable to do so because of the default of the property owners, if the village buys in the delinquent property at tax sales and perfects its tax titles and tenders the deeds to the contractor or his assignee it is not liable for the delinquent assessments.

WRIT OF ERROR to the Branch "D" Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

TOLMAN & REDFIELD, and HENRY P. CHANDLER, for plaintiff in error.

FREDERIC L. GOFF, for defendant in error.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This was an action of assumpsit in the circuit court of Cook county by plaintiff in error, for the use of Harry E. Weese, against defendant in error, to recover a balance due on eleven special assessment bonds issued by the village of LaGrange, Illinois, November 18, 1895, to Michael Donahue, in payment for the construction of a system of sewers and drains in that village. A jury was waived and the cause tried before the court on a stipulation as to the facts. Judgment was entered in the trial court in favor of plaintiff in error, for the use of Harry E. Weese, for the sum of $2275.26. Defendant in error prosecuted an appeal from that judgment to the Appellate Court for the First District, where the judgment of the circuit court was reversed and a judgment entered in that court in favor of plaintiff in error for $307.10, and the case is now in this court on a writ of *certiorari* to review the judgment of the Appellate Court.

From the stipulation of facts it appears that on June 24, 1895, an ordinance was duly passed for the construction of a system of sewers and drains in the village, to be paid for by special assessment; that a petition was duly filed in and confirmed by the county court of Cook county for a special assessment amounting to $20,510, payable in ten installments, the first installment for $3500 and the remaining nine installments for $1890 each; that a contract was thereafter let to Michael Donahue at a price not stated in the

stipulation, the work completed in accordance with the ordinance and contract and accepted by the village authorities. The contract provided for the issuance of bonds to the contractor in accordance with the law then in force, which should state the improvement and "the installments for which they are issued, and shall be made payable in the order and manner that the said installments are payable," and that all money payable under the contract should be payable out of the proceeds of the special assessment levied, and that no claim would be made against the village, in any event, until the special assessment made or to be made was collected, and that a purchase by the village of any special assessment certificates at any sale for delinquent special assessment, in default of bidders, should not be deemed a collection of such special assessment until the money due thereon was actually paid into the village treasury. Upon the completion of the work vouchers were issued to the contractor for $1567.21, payable out of the first installment of $3500, and bonds for $7200, drawing six per cent interest, payable out of the second and subsequent installments. Each of these bonds contained the following provision: "This bond is issued to anticipate the collection of a part of the installment [giving the number of the installment] of special assessment No. 99, levied for the purpose of improving Shawmut Avenue addition to LaGrange with sewers, which said installment bears interest from the 18th day of August, A. D. 1895, and this bond and the interest thereon are payable solely out of said installment when collected." The bonds payable out of the first four installments were paid as the bonds matured, and plaintiff in error now holds eleven of the bonds payable out of the fifth, sixth, seventh, eighth, ninth and tenth installments, respectively, aggregating $3100. There is also another bond outstanding in the hands of an unknown owner for $600, payable out of the eighth installment. After paying the initial costs of the proceedings and vouchers to the con-

tractor for $1567.21, there remained in the treasury such a balance from the first installment of the assessment that the village authorities passed a resolution allowing a rebate of forty per cent on the assessment to all those who had paid, and ordered a credit of that amount to be given on the other uncollected installments of the assessment as they came due, the same to be credited on each installment of the assessment at the time it was extended. This, however, only applied to the second, third and fourth installments, as before the fifth installment was extended the resolution was repealed, so that when the fifth, sixth, seventh, eighth, ninth and tenth installments were extended they were each extended for the full amount of their respective installments. Only a small portion of the fifth installment was collected and the same was returned delinquent and the property against which it was levied ordered sold, and for want of bidders was struck off and sold to the village and certificates of purchase issued to it, upon which a tax deed was afterwards obtained. The sixth, seventh, eighth, ninth and tenth installments were each extended in their turn, returned delinquent and the property against which they were levied ordered sold, and for want of bidders struck off to the village and certificates of purchase issued to it. No money, however, was paid or received by the village on account of any of these sales. The face value of all the property sold under the several installments of this assessment was $12,000, and the village tendered to plaintiff in error tax deeds and certificates of purchase for property having a face value of $5000 and a balance on hand it had from the assessment, of $43.90, which plaintiff in error refused to accept. The total amount due plaintiff in error on his bonds, including interest to December 23, 1910, is $4642.13. It is conceded that all the money collected upon the installments named in plaintiff in error's bonds has been properly expended except the sum of $202.09.

The trial court held plaintiff in error was entitled to have any surplus remaining from the prior installments applied on his bonds, and found that the sum of $1583.93, including the $202.09 above mentioned, had been realized from the assessment and illegally expended for rebates and in other ways, which, with the interest thereon at five per cent, would amount to $2231.36, to which should be added the $43.90 on hand, making a total of $2275.26, for which amount it rendered judgment against the village. On appeal to the Appellate Court that court held that plaintiff in error had no right to any part of the funds realized on the prior installment and limited his right of recovery to the amount realized on the respective installments out of which his bonds were made payable, of which it found $202.09 had been collected, which, together with the interest admitted to be due thereon, made the total amount due $307.10, and entered judgment in that court for that amount. The main question presented for our determination is whether or not plaintiff in error is entitled to have any of the surplus realized from the other installments of the assessment applied in payment on his bonds.

The provisions of the statute relating to the making of local improvements of this character, in force at the time this contract was let and the bonds issued, are found in sections 49, 63 and 64 of the Local Improvement act of 1887 as amended in 1891, (Hurd's Stat. 1895, chap. 24, pars. 163, 168*i*, 168*j*,) and in sections 1 and 2 of the act of 1893. (Pars. 168*o*, 168*p*.) The substance of said provisions is as follows:

Section 49 provides that "all persons taking any contracts with the city or village, and who agree to be paid from special assessments, shall have no claim or lien upon the city or village in any event, except from the collection of the special assessments made for the work contracted for." Section 63 provides that payment for any improvement made under that act shall be made in the following

manner: "From the amount of the first payment when it shall be collected shall first be paid all the costs of making the said assessment, including court costs. The remainder of said payment shall then be paid to the person or persons entitled thereto on the contract for said work." The amount remaining due upon the contract shall then be divided into four equal parts and vouchers issued to the person or persons entitled thereto for each part, payable in the same order and manner that the installments are payable, bearing the same rate of interest per annum that the said installments bear, and contain an agreement that the voucher is accepted in full payment of the amount therein stated, and that the signers relinquish any and all claims or liens they have against the village for the work mentioned therein or for the payment of the vouchers, except from the collection of the installment therein named, the same to be signed by the person receiving the same. Section 64 provides that any person or persons accepting such vouchers shall have no claim or lien upon the village, in any event, for the payment of said vouchers, or the interest, except from the collection of the installments for which the said vouchers are issued, and provides that this section shall apply to all holders of any of said vouchers, whether the original contractor or his assigns.

By the act of June 17, 1893, *supra,* it is provided in section 1 that the corporate authorities may provide in the ordinance that the assessment be divided into installments, not more than seven in number, the first of which shall be due and payable on and after the confirmation thereof, the second installment one year thereafter, and so on until all are paid, with the provision "that any special assessment levied for building sewers and laying water mains may in like manner be divided into not exceeding ten installments." Section 2 provides that for the purpose of anticipating the collection of the second and succeeding installments it shall be lawful for the corporate authorities to issue bonds pay-

able out of said installments, bearing interest, etc. "Each bond shall state on its face out of which installment it is payable and state by number or other designation the assessment to which such installment belongs, * * * and such bonds may be in substantially the following form," setting forth the form of the bond, in which the following provision appears: "This bond is issued to anticipate the collection of a part of the .... installment of special assessment No. ...., levied for the purpose of ......, which said installment bears interest from the .... day of ...... A. D. ...., and this bond and the interest thereon are payable solely out of said installment when collected."

Plaintiff in error contends that the effect of the provision in section 63, *supra,* is, that the money received on account of the payment of the first installment of the assessment shall first be applied in payment of the costs of the assessment and then in payment of the contract price, and that any surplus remaining after the payment of the above two items becomes a trust fund in the hands of the village, to be applied in making up any deficiency that might occur in any of the subsequent installments, and could not lawfully be applied in paying rebates to the property owners, or for any other purpose, until the full amount of the contract price for the work is paid in full. The answer to this contention is that this section makes no provision for any surplus, but, on the contrary, provides for the disposition of the whole of the amount collected on the first installment before the balance due upon the contract shall be divided into installments. If the provisions of the statute are complied with there will be no surplus. The language of the statute is: "From the amount of the first payment when it shall be collected shall first be paid all the costs of making the said assessment, including court costs. The remainder of said payment shall then be paid to the person or persons entitled thereto on the contract for said work. The amount remaining due upon the contract for

said improvement shall then be divided into four equal parts," etc. This section gave plaintiff in error the right to have the whole amount of the balance of this first installment remaining after the payment of costs of the assessment applied in payment of his contract. He did not take all of this balance but elected to take six per cent interest-bearing bonds of the village instead, in which he contracted to look solely to the respective installments of the assessment against which his bonds were issued, for his pay. When he chose the bonds he released the balance of the fund collected on the first installment from being applied in payment of his contract. He had his election and made his choice, and both he and his assignee are bound by it. When he chose the interest-bearing bonds in preference to the balance of the money realized from the first installment then in the hands of the village, he thereby released that fund from any further liability of being applied in payment of his contract. It then became the money of the property owners from whom it had been collected, and should have been returned to them. The failure of the village to so return it gave him no claim upon it. He had no right to it after taking the six per cent interest obligations of the village in its stead. He was not entitled to both. Neither could he compel the village to hold this money of the property owners collected on the first installment to be applied on his contract, without interest, as an indemnity fund, until such time as the last of his interest-bearing obligations should have matured. His assignee is in no better position. The provisions of the subsequent act of June 17, 1893, did not change the disposition that was to be made of the money collected in payment of the first installment of the assessment, but only authorized a change in the form of the obligations of the village which should represent the amount due on the subsequent installments, from vouchers to that of bonds. But in whichever form the contractor

took the obligations of the village, he was still bound to look to the collection of the respective installments of the assessment against which his vouchers or bonds were issued, for his money. This applied to both the original contractor and his assignee, alike. (Pars. 168*j*, 168*p*, *supra*.) And in this case the liability of the village to the contractor and his assignee, both under the law and his contract, was limited to the amounts of the special assessments actually collected and paid to the village. (*City of Alton* v. *Foster*, 207 Ill. 150; *Conway* v. *City of Chicago*, 237 id. 128.) It is conceded that the village has in good faith endeavored to collect each of the respective installments as they became due and payable but has been unable to do so because of the default of the property owners in paying their assessment, and that the property was returned delinquent and stricken off to the village at tax sales, and tax titles were perfected, in so far as could be, to the property sold at these sales and the same tendered to plaintiff in error, which he refused to accept. Under the law the village had done its full duty when it perfected its tax titles to the property that was delinquent and tendered the deeds obtained on the tax sales to plaintiff in error. After it had done this it was not liable to plaintiff in error for any of these delinquent installments. *Conway* v. *City of Chicago, supra.*

The Appellate Court did not err in confining plaintiff in error's right of recovery to the money collected on the respective installments of the assessment out of which they were made payable by the express provisions of the statute and the terms of the contract between Donahue and the village.

For the reasons given, the judgment of the Appellate Court will be affirmed.                    *Judgment affirmed.*