The People of the State of Illinois ex rel. Christ Anderson et al., Appellees, v. Village of Bradley et al., Appellants.

Gen. No. 9,156.

Opinion filed January 18, 1937.

E. A. MARCOTTE and CHAS. D. HENRY, both of Kankakee, for appellants.

W. H. Dyer and Eugene J. LaMarre, both of Kankakee, and David Jetzinger, of Chicago, for appellees.

Mr. Presiding Justice Huffman delivered the opinion of the court.

This is a petition for mandamus against appellants to compel a levy of the limit of taxation each year until a certain judgment against the village is paid. It appears by the petition that the village of Bradley entered into a contract with one M. C. Connors for the construction of a sewer; that the contract was completed and accepted and the acceptance duly confirmed by order of the county court, on February 15, 1922; that the cost of said project was the sum of $307,511.69; that the village collected by special taxes from the property owners of said sewer district a total sum of $315,991.08; and that from this sum of special assessments so collected by the village, it wrongfully diverted therefrom the sum of $25,094.23.

The petition alleges that appellees Shaw and Brannon, Adm'rx, instituted their suit in assumpsit against the village, in January, 1932, as assignees of Connors, the contractor who constructed the sewer, and recovered a judgment against the village in the sum of $54,119.21. The court in that judgment held the same to be subject to money due from Connors to certain materialmen, among whom were appellees, Christ Anderson, who was adjudged to be entitled to a lien against such judgment in the sum of $14,843.25, and Antoni Jelicniewski, who was adjudged to be entitled to a lien against the judgment for $6,586.30. The other persons granted liens against the judgment are not parties to this mandamus proceeding.

The appellees in this case filed their petition for mandamus against appellants in June, 1936, in which they set up that the village has not paid them anything by virtue of their aforesaid judgment obtained in 1932,

and pray that a writ of mandamus may be issued directing appellants to levy the legal limit of taxes against all the property in said village, and to pay to appellees the excess taxes over and above the amount necessary to run the city, until they shall have had satisfaction of their judgment. Appellees filed answer to the petition and among other things set up that the running expenses of the village were greater than the revenue, and that no possible excess in the revenue could equal the annual interest charge upon such judgment and therefore it could never be paid. The answer of appellants was stricken upon motion of appellees, and order entered for the writ as prayed. This appeal follows.

The rule that mandamus will not issue unless a clear legal right thereto is made to appear, is so well established that we do not consider a citation of authorities therefor necessary. The question to be determined in this appeal is whether the petition of appellees shows a clear legal right to the writ. For this reason, the answer of appellants was not referred to in detail, as the same was stricken on motion, and the writ ordered issued upon appellees' petition.

It appears by the allegations of the petition that the village wrongfully diverted the sum of $25,094.23 from the special assessments collected from the property owners in the sewer district. The parties to this petition are seeking to enforce against the taxpayers of said village, the payment of a judgment far in excess of the amount of money alleged to have been wrongfully diverted by the village from the special assessment fund, to which appellees and their assignor are by law required to look.

Section 39 of the Local Improvements Act, Ill. State Bar Stats. 1935, ch. 24, ¶ 164; Jones Ill. Stats. Ann. 76.046, in relation to sewer districts, provides that the same shall have definitely described boundaries. Prop-

erty located in the village of Bradley and lying without the boundaries of the sewer district, cannot be taxed to pay for the construction of such sewer. In proceedings under the Local Improvements Act for the construction of proposed projects, the law requires that an assessment roll shall be prepared with respect to the lands lying within the district or territory of the proposed improvement, upon which special assessments are to be levied for the payment of the cost of such improvement. Lands outside the boundary of the proposed improvement district and not a part of the assessment roll, cannot be taxed to pay for any such improvement, because, before a landowner's property can be taxed in a local improvement project, he is entitled to the notice provided by statute, and "the opportunity to be heard in court regarding the question of costs and benefits. Therefore, the judgment sought to be enforced by this petition being one approximately twice in amount to the sum alleged to have been wrongfully diverted from the special assessment fund collected, seeks to impose a greater burden of taxation than the petition shows the petitioners therein to be entitled. Furthermore, we are of the opinion that a municipality cannot be compelled to pay special assessment bonds out of its general fund, unless it has wrongfully diverted such money to its general fund. If any such assessments are diverted to another special assessment fund, then the taxpayers of the city as a whole, could not be taxed for the repayment of such money, because their property might not be situated within the district to which the money had been diverted. Neither could the property within the original district be liable, because property cannot be taxed twice to pay for the same object. *Berman v. Board of Education,* 360 Ill. 535, 543. There is nothing in the petition to show to what fund or to what purpose the village wrongfully diverted the special assessment money

involved. Therefore, there is no way to determine whether it was diverted to the general fund and used to pay the general current expenses of the village, which would render it a proper obligation upon all taxpayers of the village, or if it was diverted to another special assessment district. The series of assessment bonds falling due each year are payable out of the special assessments due and collected for that particular year. In other words, each series of special assessment bonds must look to the particular instalment out of which they are payable, and not to some other instalment, because each year's instalment of special assessment taxes is assessed, extended and levied, based upon the maturing bonds of that series, and on no other.

Appellees rely upon two cases in support of the judgment herein (*Conway v. City of Chicago*, 237 Ill. 128, and *Shade v. City of Taylorville*, 212 Ill. App. 512). It is recognized in the *Conway* case that a city is not liable generally for the unpaid balance due a contractor for work done as a local improvement project to be paid for by special assessment. (p. 135.) In that case, the city had made certain rebates to the property owners, which the party suing claimed were illegal and should be paid him by the city. With respect to this situation, the court said: "If appellant (the city) is required to pay appellee these rebates, the effect of it will be to establish a general liability against the city for the mere neglect, default or mistake of its officers in regard to the levying and collecting of a special assessment." (p. 138.) It was suggested in that case that difficulties arising out of the lapse of time would prevent the collection of the rebates by the city by a supplemental assessment. In answer to this, the court stated: "However this may be, we are not inclined to extend the general liability of a municipality for special assessments beyond that which results from a failure to pay over money actually collected by it." (p. 139.)

The case of *Shade v. City of Taylorville* recognizes the same limitation upon the part of the city in its duty to account for special assessment funds, to those actually collected. In that case, at p. 513, it is stated that one of the questions is: ''Whether it (the city) has now or has had and still should have in its possession, funds which should be applied to the payment of the unpaid balance. . . .'' Both of the above cases relied upon by appellees were suits in assumpsit. It has been said that if a city neglects or refuses to discharge its duties in connection with the levy and collection of special assessments provided for in the ordinance under which the improvement was made, that the remedy of persons entitled to have such assessments levied and collected was by mandamus to compel the performance of such duties; and that where the assessments had been levied and collected, and nothing remained to be done except to pay them to the parties entitled to them, that assumpsit was a proper remedy to compel the city to pay over the money. *Conway v. City of Chicago, supra,* p. 135.

Payment of special assessments by the property owner must be made to the person or persons indicated by statute. Funds collected by virtue of a levy of a special assessment to pay for a local improvement should be applied to the purpose to which the statute requires them to be applied. To say that a wrongful conversion of such funds by the city treasurer or a wrongful diversion thereof to some other special fund would again subject the property owner to a payment of the same assessment, would be to hold that a property owner could be compelled to pay the same instalment of special assessment taxes as many times as a city treasurer misused the money. This is not the law. *Berman v. Board of Education, supra.* The money collected by virtue of such assessments does not belong to the city. Such money constitutes a trust fund for the payment of the bonds issued for the cost of the

improvement. *Rothschild v. Village of Calumet Park,*
350 Ill. 330, 339, 340. Any surplus remaining after pay-
ment for the improvement and costs, belongs to the
property owners whose property was assessed. *Dudick
v. Baumann,* 349 Ill. 46; *Donahue v. Village of La-
Grange,* 263 Ill. 607, 614.

There must be some responsibility recognized by
persons who seek and accept positions of public trust,
otherwise the citizen has no protection against the arbi-
trary and unlawful acts of such officials. If the indi-
vidual is unwilling to accept the responsibility in-
volved, he should not seek or accept the office. It is to
be presumed that public officers will properly discharge
their duties. The courts will not anticipate that they
will attempt to evade a plain statutory duty. No uncer-
tainty can be said to exist with respect to the dispo-
sition of special assessment funds. They are purely a
creature of statute and are collected under a special
ordinance. The treasurer is required to keep a sepa-
rate account for each such special assessment district
and the tax extended against each lot, block, tract and
parcel of land therein situated. The instalments paid
the treasurer by each such district are to be applied
upon the payment of bonds of the series that mature
against that particular instalment, together with inter-
est coupons falling due. A city treasurer and his
bondsmen should be held to account for the wrongful,
arbitrary, and unlawful misuse of such funds. The
habit of public officials charged with the disbursement
of tax money, of unlawfully using one tax fund for pur-
poses other than those for which it was collected and
intended by statute, is a vicious practice and one not to
be countenanced by the courts. When such acts are
continued, they invariably lead to complications.

The petition discloses that petitioners are the as-
signees of Connors, the contractor, who installed the
sewer; that they took a judgment against the village

for $54,119.21 as such assignees, in 1932; and that they seek by this present action to compel the village to levy a general tax to pay such judgment. Under the holding in *Conway v. City of Chicago, supra,* a city is not liable generally for the unpaid balance due a contractor, for a local improvement project, which is to be paid for by special assessment. The petition alleges that from the amount of special assessment funds collected by the village, it wrongfully diverted the sum of $25,094.23. Under the holding in *Conway v. City of Chicago, supra,* this would impose upon petitioners a limitation of that amount, as it is there held the city is liable generally, only for the special assessment funds actually collected and diverted. In addition to the above defect of the petition, is the further fact that it does not appear for what purpose the money was diverted or to what use it was put. As previously stated, we are of the opinion that property of property owners lying outside the improvement district, could not be legally subjected to a tax to repay a special assessment fund which had been wrongfully diverted by the public officers, unless such money went into the general fund of the city for general corporate purposes, in which event each property owner and taxpayer would have received his proportionate benefit of such fund. But if it was diverted to another special fund, the entire municipality should not be held to account therefor by a general tax levy.

The disposition of this case is based upon the following legal principles: (1) A city is not liable generally for the unpaid balance due a contractor, for a local improvement project, which is to be paid for by special assessment. (2) A city is not liable generally for special assessments, beyond those actually collected. (3) In the event of a diversion of such funds, the city is liable generally to account only for money diverted to general corporate purposes.

In view of the foregoing, the petition herein fails to show a clear legal right to the writ, but on the contrary, presents a state of facts which are directly in conflict with the law governing the case.

The judgment of the circuit court in awarding the writ is reversed.

*Judgment reversed.*