### JOEL B. FORDYCE *et al.*

#### *v.*

### SOLOMON H. SHRIVER *et al.*

*Filed at Ottawa January 25, 1886.*

1. PARTNERSHIP—*liability of one for acts of another, inter se.* A partnership firm was formed whereby A and B were to constitute one member thereof, C and D another, and E, F and G the third member, each member thus constituted agreeing to put in one-third of the capital stock and to share alike in all losses and profits, and E, one of the third party, was by mutual consent of all made superintendent of the business and given the management and control of the partnership affairs, and heavy losses were sustained by the mismanagement of E. It was *held*, on bill to wind up the partnership affairs, that E, F and G were not liable jointly to the other members of the firm for the negligence and mismanagement of E, but that E alone was liable to them.

2. SAME—*partner's liability to firm for loss on purchase for which he is not responsible.* Where a firm composed of several members engages in business carried on by one of their number as superintendent, and the firm purchases an old stock of goods at an over-valuation, in consequence of which a loss is incurred, the superintendent will not be required to account to the other members of the firm for such loss when he is not responsible for such purchase.

3. CHANCERY—*bill for partnership account—relief against one partner for individual liability.* Under an ordinary bill for a partnership accounting and to place the firm assets in the hands of a receiver, on reference to the master to state the account he can not charge a portion of the firm for losses to the firm by the wrongful acts or mismanagement of its affairs by the partner having control thereof.

4. SAME—*answer when taken as true.* Where a case is submitted for hearing on bill and answer, the latter is to be taken as true.

5. SAME—*master's duty on reference to state account.* Where a bill for the settlement of partnership accounts is referred to the master in chancery to state the account and report the evidence, it is not his duty to report his conclusions or determine the liability of any of the parties upon collateral matters not raised by the issues.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on writ of error to the Circuit Court of Livingston county; the Hon. FRANKLIN BLADES, Judge, presiding.

The plaintiffs in error and defendants in error formed a co-partnership about the first of September, 1873, for the purpose of carrying on the mercantile business at Cornell, in Livingston county, in this State, and evidenced the same by a written article, which is as follows:

"*September 1, 1873.*

"Articles of agreement for co-partnership entered into and agreed upon this day first written, between J. B. Fordyce, John G. Fordyce, of the first part, and J. L. Garrison, all of Greene county, Pennsylvania, and M. J. Garrison, of Monongalia county, West Virginia, of the second part, A. J. Santee, I. B. Santee and S. H. Shriver, of Monongalia county, West Virginia, of the third part: On the following conditions they hereby associate themselves together for the purpose of transacting a general dry goods and grocery and produce business in the town of Cornell, Livingston county, Illinois, under the style and firm of I. B. Santee & Co., the said partnership to continue for the term of three (3) years from the first day of September, 1873, unless sooner dissolved by mutual consent of the parties, each of the parties agreeing to put an equal sum into the concern and let it remain therein until the expiration of the above term mentioned. It is further agreed that any of the parties buying goods of the store shall pay for them the usual selling price. They also agree that all losses incurred in the transaction of the business of the firm shall be borne, share and share alike, by each member of the firm, and all the profits shall be divided in like manner by each member of the firm. (It is understood to be each of the three parties that constitute the firm.) It is further understood that the books, notes, papers and debts of the firm shall be at all times open and subject to the inspection of each member of the firm, and no member of the firm shall be at liberty to engage in the business of merchandising, either by himself or in company with others, where it will in any way interfere with the business at the first named place,

during the existence of this co-partnership. It is understood and agreed that the stock of goods recently bought by S. H. Shriver and J. B. Fordyce, from Hastings, Fordyce & Coe, as well as the goods bought by Fordyce, Shriver & Co. in Chicago, is part of the stock of this firm, and have been put into the same. And it is further agreed that no individual member of this firm shall use the name of the same for any other than the legitimate purpose of the same,—that is, for transacting the business of the said firm. It is further understood that if any of the members of this firm desire to withdraw from the same before the expiration of the above named term, he shall take a private share of all the goods and debts that may be on hand at the time, or sell out, as the case may be, (the firm having the refusal at the selling price.) It is also understood that at the expiration of the said term each party shall take a share of the goods and debts in like manner. It is further agreed by the parties that no money belonging to the firm, or employed by the firm in the transaction of the business, shall be used or drawn out by any member of the said firm without the consent of said firm. It is further agreed that the agricultural implements of all kinds that were bought by S. H. Shriver, J. B. Fordyce, of Hastings, Fordyce & Coe, are a part of the merchandise of the said firm. Also houses and lots bought at the same time.

"As witness our hands and seals:

| | |
|---|---|
| J. B. FORDYCE, | [seal.] |
| JOHN G. FORDYCE, | [seal.] |
| J. L. GARRISON, | [seal.] |
| M. J. GARRISON, | [seal.] |
| S. H. SHRIVER, | [seal.] |
| A. J. SANTEE, | [seal.] |
| I. B. SANTEE. | [seal.]" |

In April, 1877, they made an additional agreement, by which the name of the firm was changed, but not the terms

of the partnership. It was also in writing, signed by the parties, and reads thus:

"CORNELL, LIVINGSTON COUNTY, ILL.,
*April 23, 1877.*

"By consent of all the parties to the within articles: Whereas the within named parties entered into co-partnership on or about September 1, 1873, under the firm name of I. B. Santee & Co., for the term of three years, the parties to this agreement agree to change the name of said firm to the firm name of Gerard Fordyce & Co. They further agree to pay all debts and liabilities of the firm of I. B. Santee & Co. The term of co-partnership under the firm name of Gerard Fordyce & Co. is extended to such time as the majority of the said parties to this agreement see proper, or think best to close the business of said firm. And it is further agreed by all the parties concerned, to turn over to the said Gerard Fordyce all the goods, merchandise, notes, papers, books, accounts, etc., and all matters concerning, either directly or indirectly, the late firm of I. B. Santee & Co., to have and to use for the legitimate purpose of said firm, as expressed in the within articles, as witness our hands and seals, day and date first written.

GERARD FORDYCE, [seal.]
S. H. SHRIVER, [seal.]
M. J. GARRISON, [seal.]
J. B. FORDYCE, [seal.]
A. J. SANTEE,
J. L. GARRISON."

On the 28th of May, 1877, the plaintiffs in error, Joel B. Fordyce, John G. Fordyce, James L. Garrison and Morris J. Garrison, exhibited their bill in the Livingston circuit court, against defendants in error, Solomon H. Shriver, A. Jackson Santee and Isaac B. Santee, praying for the appointment of a receiver, a dissolution of the partnership, an accounting, and that the affairs of the firm be closed. It sets forth the

formation of the co-partnership, under the articles of agreement mentioned; that the two Fordyces furnished one-third of the capital, the two Garrisons one-third, and Shriver and A. J. Santee one third for themselves and I. B. Santee; that the firm purchased a store building and stock of goods at Cornell, and began at once the transaction of the business for which the firm was organized; "that said I. B. Santee had the general charge of the business, as the other members of the firm were not residents of the State of Illinois, and by mutual consent he was placed in charge of the business." It states the assets of the firm to be about $13,850 and its indebtedness about $10,000; that the partership had expired by limitation; that I. B. Santee was still continuing the business; that he had reported to the members of the firm that it had not lost anything up to January, 1877, and that after that, it appeared that the debts were about equal to the assets, leaving the entire capital of about $10,000 lost; charged him with having managed the business in a very reckless and unbusinesslike manner; that he kept his accounts loosely, and that his interest was apparently adverse to that of the firm; that he had executed notes in the firm name for other than firm indebtedness, and especially one note to S. H. Shriver, his uncle, of about $1800, for an old indebtedness of the firm, as claimed by him, but which did not appear on the books; that he had kept incorrect accounts of his personal dealings with the firm, and had failed to charge himself with money drawn by him, and had ordered debtors of the firm not to pay, and creditors to sue.

The defendants in error filed their answer to the bill, admitting that they were partners with complainants under the said articles of agreement; that the business was carried on at Cornell, under the general superintendence of I. B. Santee, and that the partners have been unable to settle amicably. The answer denies any mismanagement by I. B. Santee, and alleges his management to have been careful, prudent and

faithful; denies that he made any false report to other members of the firm, or that he executed firm notes for other than firm indebtedness, or kept incorrect accounts of his personal dealings with the firm, or failed to charge himself with money drawn by him. It admits that there are assets and debts of the firm, and that the business has been a losing one.

There was no replication filed to this answer, and no evidence taken, so far as the record shows, till after the May term, 1877, at which term a decree was rendered, reciting that the cause came on for hearing *upon the bill and answer*, and proofs made in open court, and finding that the parties are partners under the articles of agreement; that the partnership has expired by limitation; that the parties are unable amicably to settle; that there are debts and assets of the firm, and decrees a dissolution of the co-partnership, and appoints a receiver with the usual power. The decree also appoints a special master "to take the books of the firm and state an account between the partners, taking and reporting such evidence as may be offered, if any, by either of the parties to the suit, outside of the books." The special master, after hearing the evidence, made his report, finding among other things the total loss of the firm to be $21,573.03, and in substance that this was caused by the mismanagement and inattention to business of I. B. Santee as general manager of the business, except as to $3055.85, arising from an over-valuation of an old stock of goods put into the concern by a part of the partners, thus reducing the loss to $18,517.18, and as I. B. Santee, with S. H. Shriver and A. J. Santee, jointly, composed the party of the third part mentioned in the article of co-partnership, the master reported that Shriver and the two Santees should make good to the other partners their losses, and should be decreed to pay to the two Fordyces, jointly, one-third, and to the two Garrisons, jointly, one-third of the $18,517.18 loss. Both parties excepted to the master's report, the complainants because the master found an

over-valuation in the old goods, of the $3055.85, and defendants for various reasons, to all his findings, but they need not be noticed in detail.  The master overruled the exceptions taken by each party.  The court sustained him in overruling complainants' exceptions, and disapproved of his not sustaining the exceptions of defendants.  Thereupon the court stated the account between the partners, showing a total loss of $12,039.46, as follows:

Total capital invested   -    -    -    -    $9,455.85
Liabilities incurred and outstanding   -    -    14,779.62

Total liabilities   -    -    -    -    $24,235.47
Loss in over-valuation of original stock, $3,055.85
Assets in hands of receiver   -    -    9,140.16
                                 12,196.01

Loss taken into accounting -     -    -    $12,039.46

And the court decreed that the Fordyces should pay one-third of the indebtedness, the Garrisons one-third, and S. H. Shriver, A. J. and I. B. Santee one-third.  It further found that I. B. Santee had been placed in charge of the business, and had conducted it in a grossly careless, reckless and negligent manner, and that said loss arose therefrom, and decreed him to pay the Fordyces their third thereof, to-wit, $4013.15, and the Garrisons the same, and to S. H. Shriver and A. J. Santee two-thirds of $4013.15, or $2675.44.  The decree was affirmed by the Appellate Court for the Second District, on writ of error prosecuted by plaintiffs in error here.

Messrs. BULL, STRAWN & RUGER, for the plaintiffs in error:

The firm was composed of three parts or parties, the first consisting of J. B. and John G. Fordyce, the second of J. L. and M. J. Garrison, and the third party of A. J. Santee, I. B. Santee and S. H. Shriver.  If the firm had consisted of but three persons, A, B and C, then there would be no

question that C would be liable to both A and B for losses sustained by his misconduct in violation of his duty as a partner. Can it make any difference if the third party, C, is composed of more than one person?

Generally the same rules which regulate the rights and duties of partners when the firm consists of individual members only, will be equally applicable when the firm consists of several distinct firms, or partly of distinct firms and partly of individual members. Therefore, if A and B, as partners, engage in a speculation with C, A and B are, with reference to C, as one individual, consequently A is answerable to C in respect to the dealings of B in the joint speculation. Collyer on Partnership, sec. 200; *Ault* v. *Goodrich*, 4 Russ. 430.

Mr. JAMES MORROW, Jr., for the defendants in error:

The defendant I. B. Santee was not a member of the firm of I. B. Santee & Co., as between the partners themselves, and it is competent to make proof of that fact, and to show his true relation to the business of the firm, as between the partners, for the purpose of adjusting their liabilities *inter sese*, according to the very right and truth of the matter. *Thompson* v. *First Nat. Bank of Toledo*, 111 U. S. 536.

In order to charge a partner with liability for losses incurred by the partnership by reason of his mismanagement or carelessness or recklessness in the conduct of the partnership business, the particular acts or facts in which such mismanagement, etc., is alleged to consist, must be averred, and must be established by proof. And the mismanagement, carelessness, etc., and the losses sustained, must be shown to sustain toward one another the relation of cause and effect. *McCrae* v. *Robinson*, 2 Murphy, 127; 2 Lindley on Partnership, 784; *Carlin* v. *Donegan*, 15 Kan. 495; *Murphy* v. *Crafts*, 13 La. Ann. 579; *Walpole* v. *Renfroe*, 16 id. 92; *Smith* v. *Loring*, 2 Ohio, 440; *Pierce* v. *Daniels*, 25 Vt. 624; *Roberts* v. *Totten*, 13 Ark. 609; *Dexter* v. *Arnold*, 3 Mason,

288; Story on Partnership, 269, 342; *Lingard* v. *Bromley*, 1 V. & B. 114; *Cragg* v. *Ford*, 1 Y. & C. 280; *Jenkins* v. *Pickenpaugh*, 40 Ind. 133.

The loss must fall alone on the partner guilty of such breach of duty. 2 Lindley on Partnership, 783, 784, and cases *supra.*

Mr. JUSTICE TUNNICLIFF delivered the opinion of the Court:

It is insisted for plaintiffs in error that the court below erred in not sustaining their exceptions to the master's report, —in other words, in deducting from the losses that part thereof arising from an over-valuation of the old stock of goods, of $3055.85, and in not decreeing that Shriver and A. J. Santee, jointly with I. B. Santee, as parties of the third part, to the agreement, should make good the losses of the Fordyces and Garrisons. It is argued by their counsel that because Shriver and A. J. Santee and I. B. Santee agreed in the article to furnish one-third of the capital, and share one-third of the profits and losses jointly, therefore Shriver and A. J. Santee became, by implication, as matter of law, liable for any losses the firm might sustain by reason of the business having been placed in charge of I. B. Santee, and by him recklessly and wrongfully managed, as they claim. We do not think such a conclusion properly drawn from their undertaking. All they agreed to do was to furnish, with I. B. Santee, one-third of the capital, and share with him one-third of the profits or losses. There is nothing in the article of agreement showing that it was agreed or understood that I. B. Santee was to have the charge or management of the business, much less that Shriver and A. J. Santee were the cause of his being made superintendent of it, or that they were to be responsible for his acts. The bill avers that I. B. Santee was placed in general charge of the business by the mutual consent of the other members of the firm, and J. L. Garrison

testifies that he had a conversation with I. B. Santee, J. B. Fordyce, A. J. Santee, S. H. Shriver, and M. J. Garrison, upstairs in the store of M. J. Garrison, at Wadestown, West Virginia, and that it was agreed that I. B. Santee would become a member of the firm and conduct the business, and that he left the same day for Cornell,—August, 1873.

It is hardly probable that if there was any agreement or expectation that Shriver and A. J. Santee were to be responsible for the acts of I. B. Santee in conducting the business, no mention should be made of it in the written article or in any conversation relating to the business. We do not think a fair construction of the article of agreement warrants the holding that as a matter of law or fact they assumed or are liable for any such responsibility. Besides, the bill is not framed with a view of making Shriver and A. J. Santee accountable to the other partners for any losses the firm sustained by the wrongful acts or mismanagement of its affairs by I. B. Santee. There is no claim of that kind in the bill, and no prayer that they may be so charged in stating the account. Indeed, there are no specific allegations in the bill that the firm had sustained any losses by reason of his recklessness, mismanagement, or inattention to business. The general charge of negligence, carelessness, and the like, were made, we presume, with a view of showing that he was not a suitable person to be left in charge of the business, and as a reason why a receiver should be appointed. But even if these charges were sufficient, they are all denied in the answer, and to which no replication was filed. The answer admitted enough to authorize the appointment of a receiver, and for this reason probably no replication was deemed necessary, and that the case could be submitted to the court on bill and answer, except as to stating the account, and that was referred to the master. When a case is submitted for hearing on bill and answer, the answer is to be taken as true. Such being the state of the record, and the case being referred to the

master to state the account and report the evidence, it is not required of him that he should report his conclusions or determine the liability of parties upon collateral matters not raised by the issues.

It was not error for the court not to make I. B. Santee account for losses of the firm in purchasing an old stock of goods at an over-valuation, when he was not responsible for the purchase. Whether there was error in the rendition of the decree against I. B. Santee, is not directly before us as to him, as he has not appealed, prosecuted a writ of error, or assigned cross-errors upon the record. For the same reason we need not notice the observations of his counsel that he was not a partner in this firm. It is admitted, however, in his answer, that he was, and that can not be controverted now. It is sufficient to say that there are no errors in this record of which plaintiffs in error can complain, and the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*