Arthur T. Galt et al., Appellees, v. City of Chicago, Appellant.

Gen. No. 41,994.

Heard in the first division of this court for the first district at the October term, 1941. Opinion filed June 1, 1942. Rehearing denied June 16, 1942.

BARNET HODES, Corporation Counsel, for appellant; JAMES A. VELDE and ROBERT J. NOLAN, Assistant Corporation Counsel, of counsel.

LEONARD C. MEAD, of Geneva, Ill., and D'ANCONA, PFLAUM & KOHLSAAT, of Chicago, for appellees; TOLMAN & MEGAN and HOWARD B. BRYANT, all of Chicago, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

April 7, 1939, Arthur T. Galt filed his complaint in chancery and afterward it was amended by adding Louise Rothermel and Ernest Freeman additional parties plaintiff. The basis of the suit was that defendant, City of Chicago, had collected certain special assessment funds which it did not distribute *pro rata* in payment of special assessment bonds owned by plaintiffs. They prayed for an accounting and that a decree be entered for the amount found due. Some

of the facts were stipulated, other evidence was introduced, and a decree entered in plaintiffs' favor against defendant for $125,362.16. Defendant appeals.

The record discloses that plaintiffs' claim is based on the fact that they owned special assessment bonds issued in about 164 separate special assessment proceedings brought under the Local Improvement Act of 1897 and amendments thereto; that collections of the assessments were made from time to time by the defendant City and prior to 1933, such funds were disbursed by the City by paying some of the bonds presented in full on the theory that the City had the right to do this—to pay bonds in the order of their presentation. This method of disbursing special assessment funds was held to be improper by our Supreme Court in an opinion filed October 22, 1932, rehearing denied December 7, 1932, *Rothschild v. Village of Calumet Park*, 350 Ill. 330, which affirmed the judgment of another division of this court, 262 Ill. App. 96.

In that case it was held that where special assessment bonds are made payable out of a particular installment some of which assessment had been collected, the funds should be distributed *pro rata* among the bondholders who held bonds payable out of the same installment and that where the City had failed to follow this method but had paid some bonds in full, it was liable to the bondholders who had not been paid their *pro rata* share of the funds. The Supreme Court there said: ''We have held that the proceeds of special assessments are trust funds for the payment of the bonds issued for the cost of the improvement. (*Conway v. City of Chicago*, 237 Ill. 128.) . . . If for any reason the full collection of an installment is not made the deficiency must.fall upon the bondholders, and equity requires that the loss shall be borne ratably by each bondholder. Therefore, when the bonds of any year become due and the collection from the installment of that year is insufficient to pay them,

the bondholders are entitled to the amount collected, and it is the duty of the trustee—the municipality—to pay upon each bond issued against the installment its share, *pro rata,* of that amount."

After the decision of the *Rothschild* case, the method there pointed out of disbursing special assessment funds collected by the City was followed, although in the instant case a witness testified that the interest collected by the City in special assessment proceedings was not *pro rated*. But his testimony is so meager that it is of little value and is not important here.

The evidence further shows that prior to July 1, 1927, the bonds, which are the basis of plaintiffs' suit, were owned and held by the State Bank of Chicago. That about July 1, 1927, the Foreman Trust & Savings Bank acquired the bonds for a valuable consideration and owned and held them until June 8, 1931. On that date the First Union Trust & Savings Bank acquired the bonds from the Foreman Bank for a valuable consideration and owned and held them until July 17, 1933. On the latter date the First National Bank of Chicago, for a valuable consideration, acquired the bonds and owned and held them until April 20, 1936, when they were purchased by a syndicate consisting of plaintiffs, Arthur T. Galt, Louise Rothermel, Ernest Freeman and Walter Freeman and on June 27, 1938, plaintiffs purchased all interest of Walter Freeman in the bonds.

The face value of the bonds purchased by plaintiffs was about $580,000 for which they paid fifty cents on the dollar for the amount remaining unpaid on the bonds at the time of the purchase, April 20, 1936. But the amount due on the bonds at that time does not appear. We think it further appears that the bonds owned by the four banks, above mentioned, and by the plaintiffs, constituted but a part of the bonds issued—

that the bonds did not represent all the bonds of any one issue.

The stipulation, of facts further shows that during the period when each of the banks owned the bonds "numerous payments in excess of the *pro rata* share of collections applicable in payment thereof were made to each of said banks. . . . The amount of funds necessary in the various warrants and installments to pay the *pro rata* share of bonds involved in this litigation has been withdrawn from the installments of said warrants to pay to the prior owners of the bonds now sued on, amounts in excess of their *pro rata* share . . . and the parties hereto agree that in each instance the amount of overpayments to the assignors of the plaintiffs equal or exceed the amount due the present plaintiffs upon a *pro rata* basis."

Counsel for plaintiffs in their brief say that the decree entered in the instant case recites that during the period the four banks owned the bonds "numerous payments in excess of the *pro rata* share were made to the banks and other bondholders. . . . It is also recited that overpayments were also made to other bondholders than the banks out of the special assessment funds involved in this litigation, since the banks do not own all of the bonds issued in each respective installment. From this it follows, contrary to the assumption of appellants, that not all of the diversion of funds were to the banks which at one time held the bonds now owned by plaintiffs." But we think the fact that excess payments were made to bondholders by the City other than the bonds held by the banks, some of which are involved in the instant suit, is immaterial for the reason that it is stipulated the amount of the overpayments made to the four banks equals or exceeds the amount due plaintiffs on a *pro rata* basis—that the amount of overpayments

made to the banks equalled or exceeded the amount awarded plaintiffs by the decree appealed from.

Counsel for defendant contends that "The banks which owned the bonds before the plaintiffs could not have recovered from the defendant for failure to make *pro rata* payments because they received the overpayments." This is conceded by counsel for plaintiffs. They say: "It is true that if the banks had sued and had profited by the overpayment they could not recover the amount overpaid to them. Here however the bonds were acquired by the plaintiffs without any knowledge of such payments on other bonds or any of the other transactions. The plaintiff was [plaintiffs were] buying the particular bonds. The record shows that they examined the bonds carefully. They had no notice of any of the outside transactions. If the principle of law claimed by the appellants [defendant] were applied to special assessment bonds the bonds would be practically worthless because no one buying them would know what latent defenses the city might have on other transactions."

It being conceded that the banks could not maintain suit based on the bonds in suit, the questions remain: Are plaintiffs in a better position and did they do all that was required of them before purchasing the bonds? Special assessment bonds such as are involved in the instant case are not negotiable and the holders of them have no greater rights than the contractor who did the work to whom the bonds were issued. *Northern Trust Co. v. Village of Wilmette*, 220 Ill. 417.

Charles F. Rothermel, called by plaintiffs, testified he was the husband of Louise Rothermel, one of plaintiffs; that he had been in the real estate business for 27 years; that he was present at the negotiations leading up to the purchase of the bonds from the First National Bank; that "I made inquiries regarding these bonds prior to their purchase. I checked the

face amount still due on the bonds, spent some time looking at the real estate secured by the special assessments, and checked the validity of the bonds.'' On cross-examination he testified: ''The negotiations for the purchase of the bonds took place long after the bonds had matured.'' That the checking of the bonds ''was done with the First National Bank, who were the sellers of the bonds. I asked the seller of the bonds whether they had value. The price paid for these bonds was Fifty cents on the dollar. . . . Being in the real estate business I checked the properties and checked the various neighborhoods. I did not ask the opinion of any attorneys nor did I make any inquiry in the office of the Comptroller of the City of Chicago as to whether or not these bonds were being honored.'' The testimony of this witness, that he checked the properties and the various neighborhoods, is of little or no probative value. The assessment was against each separate piece of property; 164 of these assessments are involved. By checking the properties and the neighborhoods no information could be obtained as to whether the assessment on specified properties had been paid and unless this were done, any information as to the value of the bonds obtained from such checking would be of little or no value.

In *Silverman v. Bullock*, 98 Ill. 11, which was a suit to foreclose a mortgage, the court in holding that equitable defense might be interposed, said: ''Persons dealing in such securities can, without difficulty, inquire of the makers if any defenses exist against them, but more than that it is not practicable to do. Of course, it would not be possible to discover, even by the utmost diligence, all persons that might have equitable rights in the subject matter of the assignment, and the adoption of a rule that would let in latent equities to prevail against the assignee, would be to ensnare dealers in such securities.''

In the instant case we think that plaintiffs, about to purchase the special assessment bonds, could without difficulty, have inquired of the City Comptroller or other proper official as to the collections made and how the funds had been disbursed, and ascertained whether overpayment had been made on the bonds about to be purchased. This they did not do and we think they were not innocent purchasers for value. In these circumstances, the City has the right to interpose the same defense that it could have interposed against the banks, and it follows that plaintiffs are not entitled to recover. And we are of opinion that the facts involved in the case of *Getz v. City of Harvey*, 118 F. (2d) 817, cited by plaintiffs, are so dissimilar from the facts in the case at bar that they are not applicable.

In that case the City of Harvey had issued water works certificates payable solely from the water fund secured by a mortgage. It wished to refinance the certificates and certain brokers agreed to obtain them and deliver them to the City at the price for which the brokers acquired them. The brokers paid seventy cents on the dollar for some of them but were unable to procure all of the certificates required. Afterward the brokers sold them and, after several intermediate transfers, they were purchased by plaintiff Getz at par. In the meantime the City had received collections in the fund from which the certificates were to be paid but used the money for another purpose. Getz sued the City for an accounting. The City contended it had the right to receive the certificates at seventy cents on the dollar by reason of its contract with the brokers. This contention was sustained by the trial court but on appeal to the Circuit Court of Appeals such holding was reversed. In that case the mortgage securing the payment of the certificates provided that ". . . any purchaser before maturity of the certificates, . . . shall not be required to in-

quire into the title of the respective holders thereof, or to take any notice of any trust relating thereto, or, except by express notice thereof, be affected by the right, title or claim of any other person . . . , it being the intention . . . that the purchaser in good faith for value and before maturity . . . , shall not be affected (unless he shall have actual knowledge . . .) by any notice, facts or things that may at any time affect the relations between the City and pay prior holders or owners of said certificates.''

There is no provision in the special assessment bonds involved in this case as that just quoted from the mortgage in the *Getz* case. In the *Getz* case the money was used not to pay the certificates but for another purpose, while in the instant case the money was used to pay special assessment bonds but through a misinterpretation of the law it was not applied *pro rata* on the outstanding bonds. In the *Getz* case the court further held there was no equity in favor of the City of Harvey, while in the instant case there is an equity in favor of the City of Chicago. Moreover, Getz paid par for the certificates and purchased all or most of them before maturity, while plaintiffs in the instant case paid fifty cents on the dollar and bought all of the bonds long after they were overdue.

Plaintiffs, by inquiring of the City Comptroller, could have ascertained that the City had not disbursed the funds collected *pro rata* in payment of the bonds. They were not negotiable instruments in the sense that promissory notes are. In these circumstances we think it cannot be said that plaintiffs acquired the bonds in good faith for a valuable consideration without notice of prior overpayments.

The judgment of the superior court of Cook county is reversed.

*Judgment reversed.*

McSURELY, P. J., and MATCHETT, J., concur.