136

C. A. Prange, Appellant, and George A. Wallace, Plaintiff, v. City of Marion, Illinois, Appellee.

138

Opinion filed March 2, 1943.   Rehearing denied June 1, 1943.

E. E. DENISON, of Marion, for appellant.

DAVID A. WARFORD, of Marion, for appellee.

MR. JUSTICE BRISTOW delivered the opinion of the court.

Appellant, C. A. Prange and one George A. Wallace, who does not appeal, as plaintiffs, filed their complaint, in chancery, against the City of Marion, Illinois, for an accounting, and to recover several amounts claimed due appellant from said city. The claim is based upon nonpayment of special improvement bonds issued by said city, for a local improvement, called, "Sidewalk District No. 4."

Appellant filed counts one and three which charge the same matter, except that count three is to recover on bonds under the seventh instalment of the improvement. Questions for consideration in this appeal are in regard to the charges of liability contained in allegations of paragraphs number 13a, 13b, 13c, 13d and 14a to 14f and 15a to 15f and 16a to 16e, hereafter referred to as paragraphs 13, 14, 15 and 16.

Paragraphs 13 allege that the city unlawfully, wrongfully and knowingly canceled and abated assessments against forty-seven private property owners, omitted same from the roll of the city collector and omitted all assessments levied against itself for public benefits which amounted to $900 per year against the city. The total amount so omitted against private property on instalments two to ten was $4,853.70, of which $1,428.60 should have been paid on appellant's bonds with interest.

Paragraphs 14 allege that the city collected assessments from private property owners and that the city negligently, improperly and wrongfully diverted same and used same for some other purpose and should be liable to appellant for such pro rata amounts due him

140

under instalments five to ten with interest from the dates each instalment was due.

Paragraphs 15 allege that the city was a trustee for the benefit of bond owners and had the duty to use every reasonable effort and legal means to collect instalments; to pay into the fund assessments levied against it, but that it intentionally failed to pay assessments of $900 on each instalment two to ten against it and refused to pay interest at 6 per cent under the ordinance and statute whereby there was a deficiency; that the total amount assessed against the city which it had not paid into the instalment fund was $8,100 and that with interest at 6 per cent thereon under such instalments, the amount for which the city was indebted to appellant was $3,417.92.

Paragraphs 16 allege that assessments against private properties in the amount of $32,931.90 became delinquent from which the pro rata share of appellant's bonds was $10,893.18; that such properties became delinquent and were forfeited to the State; that it was the duty of the city to perfect tax titles and tender same to the unpaid bondholders in lieu of unpaid assessments, and that the city negligently, wrongfully and unlawfully failed to perform its statutory duties as trustee, as alleged under said paragraphs 13, 14, 15 and 16 whereby there was a deficit and appellant's bonds were not paid.

Upon motion of the defendant, the trial court entered an order dismissing said paragraphs 13 and 16 and denied motion to strike said paragraphs 14 and 15.

Defendant filed answers denying averments in the complaint and then filed counterclaims to each count, alleging overpayment of interest made to appellant or former owners of his bonds and claimed same as a set off against the amounts due on appellant's bonds. On motion of appellant, the counterclaims were stricken. Defendant then in same wording as used

in the counterclaim, filed pleas of payment on the bonds by overpayment of interest. Motion to strike these special pleas of payment were made and overruled. The cause was referred to a special master to take proof and report his findings. He made his findings of fact and his report both as to the facts and also his conclusion of law. He reported as a matter of law there could be no recovery under said paragraphs 14 and 15, though proven, which the court by its ruling had directed him to consider as setting up legal grounds of.liability. Various exceptions and motions were made to the master's report but were overruled, and later the cause coming up before another trial judge, a decree was entered approving the report of the master.

This decree, in substance, held that appellant plaintiff, could not recover from the defendant under said paragraphs 13 because of any rebating or canceling of assessments levied against private property; that no recovery lay under said paragraphs 16 because of failure of defendant city as trustee to perform its duty as trustee and collect assessments levied against private properties or obtain such tax titles against private properties and to tender such tax titles to the bondholders; that no recovery could be had under paragraphs 15 because of the city's failure and refusal to pay the amount of public benefits assessed against itself, with interest. The decree held that the city was liable under paragraphs 14 for assessments collected by it from private landowners which had been wrongfully diverted by and used by the city for other purposes with interest on same from the date of the last collection made. Under the plea of payment, the decree directed that the amount of $3,840 with interest, should be deducted from the amount it otherwise found due plaintiff appellant from assessments which the city had collected and diverted to other uses. After such deduction the decree awarded appellant

plaintiff a judgment against the appellee defendant in the amount of $7,823.04.

The evidence showed the proceedings for this improvement was divided into ten instalments, of which number two to ten each were in the amount of $12,700. Total amount assessed against the city was $9,718.51 and in the amount of $900 under each of said instalments two to ten. Against private properties $11,800 was assessed on each of said instalments two to ten. Money was borrowed against instalments two to ten by the city and bonds were issued for the amount of $11,800 against each of the first seven of said instalments; $5,000 against the eighth and $7,500 against the ninth of said instalments two to ten. Appellant owned 61 bonds in the total face amount of $29,900 payable under instalments five to ten which matured annually from July 1, 1927 to July 1, 1932. Some payments were made upon these bonds up to the year 1935 being in the total amount of $4,460.50. The city collected, diverted to use for other purposes $9,032.06 on instalments five to ten. That amount with interest at 5 per cent from the respective dates of collection by the city calculated to January 1, 1941, would be $14,369.92. The total amount of $900 per year which the city did not collect, with interest on same at 6 per cent from the date each of said $900 instalments were due calculated to January 2, 1941, would be $14,418.

The city collected on interest accounts certain amounts from private property but not in an amount equal to the coupons due. The city claimed it had paid in full all of the coupons and as interest had paid on appellant's bonds more than the amount of the coupons in the total sum of $3,848. No overpayment was made to plaintiff appellant. The records of the city and testimony of witnesses failed to show the name of any person to whom any overpayment of interest had been made.

The foregoing is a synopsis of the detailed statement of pleadings, proceedings and facts recited in appellant's brief. Appellee agrees that the foregoing matter we have recited, is correct.

On one point only do appellant and appellee disagree as to facts proved. Appellant contends that the evidence showed that a certificate of final completion and acceptance of the improvement was filed in the county court, notices of hearing thereon given and proceedings had in the county court and judgment entered by the county court finding that the improvement had been completed in accordance with the ordinance. Appellee contends that the proof made was by evidence which was not competent and that the finding of the special master and of the court in its decree that all proceedings had been had strictly in compliance with the law in the county court, was an erroneous finding. But appellee has filed no cross-errors or cross-appeal.

The trial court by its denial of motion to strike paragraphs 15a to 15f held as a matter of law that if same were proven, liability would lie against the city. These paragraphs charged that the city had deliberately omitted all assessments against itself from the roll of its city collector and had paid nothing on assessments against itself. Such facts were also proven.

Appellant first earnestly argues that since the trial court in the first instance so held liability under said paragraphs and that since the special master wrongfully exceeded his authority by reporting his conclusion of law to the contrary, that this case should be reversed. Authorities cited are *Hards v. Burton,* 79 Ill. 504; *Fordyce v. Shriver,* 115 Ill. 530, 540; *Wilhite v. Pearce,* 47 Ill. 413, 416; *Ennesser v. Hudek,* 169 Ill. 494; *Kelly v. Fahrney,* 145 Ill. App. 80; *Barnes v. Barnes,* 282 Ill. 593; *Hollahan v. Sowers,* 111 Ill. App. 263.

These cases do set out the duties and authority of a master in chancery and proper procedure in accounting in chancery cases. They emphasize that the master is not vested with judicial powers and that same cannot be delegated to him by the court.

In *Hards v. Burton* the decree provided that, if future notes secured by a mortgage, should become due and affidavit to that effect be filed, that the master should sell the property. The court held this in effect, allowed the master to find the amount due, decree the sale and execute his own decree. The court further said at page 509 ''All the acts of the master become binding only by being approved and adopted by the court. Hence, the court alone can find, adjudge and decree so as to bind the parties and the subject matter.'' In the case under consideration, the court, by another judge sitting, did adopt and approve the master's report and by its decree did adjudicate and bind the parties. The distinction between the case of *Hards v. Burton* and the case under consideration is therefore, quite apparent. An examination of the other cases cited, and relied upon, reveals that they are likewise readily distinguishable.

The trial court though presided over by a different judge had the right to and did adjudicate the question of liability under said paragraphs 15a to 15f. That it so did adjudicate is shown by its decree which covers 20 pages of the record. Although its final adjudication was different from the preliminary ruling of the first trial judge, is no ground for reversal. We are reviewing the final decree and judgment entered in this case. Therefore, we do not think that the assigned errors, that this case should be reversed because of improper action by the special master in refusing to find and report a liability under said paragraphs 15a to 15f, and reporting his conclusion as to law, are grounds for reversal of this cause.

The next question is whether, under paragraphs 15a

to 15f, the city is liable for assessments levied against it with interest, which it failed to levy and refused to pay on bonds. We are of the opinion that it is liable.

Assessments against the city are subject to payment of interest the same as assessments against private property. *City of Chicago v. People ex rel. Union Trust Co.,* 215 Ill. 235, 240; *City of Chicago v. Union Trust Co.,* 138 Ill. App. 545, 552; *Burke v. City of Chicago,* 185 Ill. App. 228. The charges are, that the city wilfully, negligently and deliberately failed to collect or pay on bonds any of the assessments which had been confirmed against it. Appellant's bonds were issued against these assessments on instalments five to ten. The city obtained this public improvement and credit on these assessments against itself and accruing interest. It would be inequitable to relieve the city from payment to appellant of the amount it should have placed into the fund together with interest at 6 per cent from the date of the issuance of the first voucher on account of this work. Ill. Rev. Stat. 1921, ch. 24, Local Improvements, sec. 42; *Rothschild v. Village of Calumet Park,* 350 Ill. 330. This money should be considered as though it were in the hands of the city when due, subject to be applied upon appellant's bonds. *Grand Carniolian S. C. U. v. Village of Rockdale,* 314 Ill. App. 308, 311–313; *Shade v. City of Taylorville,* 212 Ill. App. 512, 515; *Conway v. City of Chicago,* 237 Ill. 128.

Assessments against the city drew interest at the rate of 6 per cent per annum, from the date of the issuance of the first voucher or bond, until such assessments are paid. Illinois Session Laws 1921, Local Improvements, pages 195, 199, sec. 42; Ill. Rev. Stat. 1941, ch. 24, par. 84—42 [Jones Ill. Stats. Ann. 21.2251].

Contention is made that suit in chancery was improperly instituted. We believe this suit in chancery for accounting properly lies. *Grand Carniolian S. C. U.*

*v. Village of Rockdale, supra.* Appellee cites several cases and argues that suit must be instituted in assumpsit or mandamus. On examination of cases cited, it appears that they do not hold that a proceeding in equity for accounting, is not also proper, in a case like the one under consideration, where the accounts are complicated. *Rothschild v. Village of Calumet Park,* 350 Ill. 330, 338.

The complaint alleged that all proceedings under the Local Improvement Act were complied with by the city and the county court and the improvement was in all respects completed in accordance with the ordinance and contract. Appellee denied these allegations. Appellee contends that the proof failed to show that the county court ever made a finding that the improvement was constructed in substantial compliance, in that such proof was minutes of the judge entered on his docket. The clerk failed to write up a record from these minutes. The proof showed these minutes were in the handwriting of the judge himself and recited that on: December 2, 1922, petitioner makes due proof of posting and publishing notices. No objections filed. Default. The court finds that the improvement conforms substantially to the requirements of the original ordinance for the construction of same. Certificate of final completion and acceptance confirmed. Sidewalk District No. 4, Marion, Ill. appellee cites *Case v. City of Sullivan,* 222 Ill. 56, 58; *People v. Townsend,* 352 Ill. 254 and *Gage v. People ex rel. Hanberg,* 219 Ill. 634, 635. In each case the court positively stated that by stipulation, allegation or proof it appeared no certificate of substantial construction had ever been filed in the county court. Appellee also cites two cases holding that proof of a money judgment must be made by production of the court record and disallowance of a claim in bankruptcy cannot be proved by a notation by the referee that claim was denied.

This proceeding is one against the city who was a party to the original proceedings and is not one between third parties. A document written and signed by a judge has been held good between the parties and that it was not essential that it had been recorded by the clerk. Am. Jur., vol. 30, pages 825, 828. However, we believe the city is estopped to make claim that no certificate of substantial completion was filed or found to be substantial by the county court. Twenty years have passed. The City of Marion issued bonds in large amount, secured money from purchasers of these bonds and thereby constructed sidewalks throughout its boundaries. It has collected large amounts of assessments from private properties. It has made payments on bonds and interest issued against a number of instalments. It has also made partial payments on appellant's bonds. It has raised no question on the validity of the bonds or proceedings until sued for nonpayment of assessments confirmed against itself. It should have followed proceedings it instituted in the county court to final conclusion,—to the recording of whatever decree or order may have been made or become lost or abstracted from the files; and to the enrolling of record of the finding and order, from the minutes of the judge of the county court. We do not believe error can be urged upon the finding of the trial court that all proceedings were made in the county court required by statute. *McGovern v. City of Chicago,* 281 Ill. 264, 282; *Cook v. City of Staunton,* 295 Ill. App. 111; C. J. 44, page 305.

The master found and the trial court found as a fact that final certificate of completion was duly filed and finding and order of the county court was duly entered in the proceedings in all manner prescribed by statute.

Appellant cites a number of cases to the effect that since appellee has filed no cross-errors, its entire con-

tention and argument in regard to improper evidence admitted, should be ignored. However, the Supreme Court of Illinois in *Swain v. Hoberg*, 380 Ill. 442, 444, has relaxed the technical requirement, where a brief in definite divisions states and argues points relied upon. Appellee's brief complies with the requirements of this recent decision of the Supreme Court.

Under the claim advanced in paragraphs 15a to 15g, appellant is not entitled to the entire amount of principal and interest assessed against the city and which, constructively, the city is charged with holding, if there are any other bonds outstanding. Appellant's bonds are entitled to payment of such pro rata part of the assessments and interest due from the city as the principal amounts of appellant's bonds compare with the principal amounts of other bonds originally issued and now outstanding, if any, and which were payable out of each respective instalment. Illinois Session Laws 1921, 198 Local Improvements. Ill. Rev. Stat. 1941, ch. 24, Local Improvements, par. 84—86 [Jones Ill. Stats. Ann. 21.2308]; *Rothschild v. Village of Calumet Park*, 350 Ill. 330, 338, 339, 342.

In paragraphs 13a to 13d, which on motion, were stricken, appellant contends that the city is liable to him for the amount of abatements it made to forty-seven private property owners.

The charge in said paragraphs is that, after the bonds had been sold, the city knowingly, unlawfully and wrongfully canceled or abated sundry assessments which had been levied against private properties, thereby leaving a deficit in the amount to be collected, of which deficit $900 per instalment was the amount assessed against the city. We have already held that the city is liable for its own assessments as, if collected and held by it for payments of bonds issued against such respective instalments.

It is to be noted that the facts stated are that these assessments were abated, canceled or omitted from

the roll of the city collector. They were not collected and rebated and the use of the word rebate is statement of a conclusion and not of a fact pleaded. Appellant cites numerous authorities, quotes from a number and contends that, in chancery, the city, as trustee, is liable for abatement of such assessments against private properties. Cases chiefly relied upon by him are *Barber Asphalt Pav. Co. v. City of Chicago,* 139 Ill. App. 121; *Burke v. City of Chicago,* 185 Ill. App. 228; *Village of Park Ridge v. Robinson,* 198 Ill. 571. Appellee cites, quotes and relies upon *Conway v. City of Chicago,* 237 Ill. 128; *Price v. City of Elgin,* 257 Ill. 63, 67; *Hoehamer v. Village of Elmwood Park,* 361 Ill. 422, 432; *Rothschild v. Village of Calumet Park,* 350 Ill. 330, 338; *Village of Lansing v. Sundstrom,* 379 Ill. 121, 124, 125.

The argument turns upon the question, whether the case of *Conway v. City of Chicago* controls this case under consideration. In that case the Supreme Court reversed the case of *City of Chicago v. Conway,* 138 Ill. App. 320.

In the case of *Barber Asphalt Pav. Co.* at page 129, the court said, "it is stipulated that the city has collected sufficient moneys to pay them (vouchers), but has applied the money so collected to another purpose, namely, payment of rebates to property owners assessed for the improvement itself." It then cites the appellate decision of the *Conway* case which had been decided three months earlier. Appellant has supplied a certified copy of the full decision of the case of *Burke v. City of Chicago,* 185 Ill. App. 228, which refers to the *Conway* case, 237 Ill. 128. It said that counsel conceded liability under the *Conway* case for amount of rebates shown. The *Burke* case also said it was stipulated that the city should have had in its hands an amount for payment of such bonds, "but that it had wrongfully paid out that amount in rebates."

Appellant asserts that there is nothing in the *Conway* case intended to overrule *Village of Park Ridge v. Robinson.* Examination of *Robinson* case will show questions there involved are not those here, for consideration.

In *Conway v. City of Chicago,* 237 Ill. 128, 132, 138, the city made abatements to private property owners, as in this case. Action in assumpsit was brought against the city to recover the amount so abated with interest. A lengthy stipulation of facts recites a situation much like that under consideration and the stipulation stated that the action of the city was taken in good faith and without fraud on the part of its officers.

In the instant case the total amount of assessments was $127,891.98. Instalments number two to ten amounted to $114,300. The total amount of bonds issued against instalments two to ten was $95,100. The total amount of assessments abated against private properties is alleged to be $529.23 on each instalment two to ten or a total amount of $4,853.07. Why the abatements were made is not alleged. Fraud is never presumed; on the contrary, good faith, is. No allegations of fact were made that abatements were fraudulently made, or through any conspiracy, deceit, or other than in good faith. Allegations were made that they were unlawfully, wrongfully and knowingly made. The same can be said of the city's action in the *Conway* case.

In the *Conway* case, 237 Ill. at pages 138 and 139, on the point of abatements, the court said "It must be borne in mind that the amount of these rebates never, in fact, came into the hands of the city . . . If appellant is required to pay appellee these rebates, the effect of it will be to establish a general liability against the city for the mere neglect, default or mistake of its officers in regard to the levying and collecting of a special assessment. It is true . . . such rebates were null and void . . . appellee's remedy,

in so far as the amount of these rebates is concerned, is by *mandamus* to compel the performance of whatever legal duties appellant is under in connection with the collection of these rebates from the taxpayers. It is suggested that difficulties arising out of the lapse of time will prevent the collection of the original assessment or the levying of a supplemental assessment covering these rebates. However this may be, we are not inclined to extend the general liability of a municipality for special assessments beyond that which results from a failure to pay over money actually collected by it. These rebates never having come into the hands of the city in cash, it is not liable in an action of assumpsit for them, on the theory that by the exercise of due diligence in the discharge of its legal duties it ought to have collected them.''

Appellant contends that such holding only applies to a case in assumpsit and not to liability in a chancery proceeding. He has cited no case holding that liability is different. Many cases cited by both parties discuss liability in actions at law, on the theory that a municipality is a trustee and liable in certain cases where it has not discharged its legal duty by the exercise of due diligence. Appellant contends that since none of his bonds became due until July 1, 1927, before that date he could not have instituted a suit in mandamus to compel assessments, a part of which were charged with payments of his bonds originally issued, to be restored upon the assessment roll of the city collector. The former owner of his bonds, we think, could have instituted such action. To the contention there was nothing to put the bondholders on notice, the roll itself was a public record and notice. We believe the principle of liability in regard to abatement of assessments is determined by this *Conway* case and, therefore, that the court did not commit error by sustaining the motion to strike paragraphs 13a to 13d as to the private properties; but that the

court was in error in striking that part of said paragraphs 13a to 13d charging assessments against the city for amounts, against itself and interest thereon, which it was charged with holding and which it itself also tried to abate,

The trial court overruled motion to strike paragraphs 14a to 14f. These charged liability against the city for using for other purposes assessments received by it from private property owners. The trial court held that the city should account for such amounts with interest at 5 per cent from the date when the last collection from private property owners was made by the city. Appellant contends that he is entitled to interest from the time he or prior owners of his bonds had the right to demand payment on the bonds. The city withheld these funds and has not paid them out. The master found and the court approved the finding that the evidence was indefinite as to date any request was made for payment on the bonds. The record covers 662 pages and there are 227 pages in the abstract. The only evidence pointed out to us and which we can find on the question of presentation of bonds and demands for payment is shown by the testimony of witnesses taken by depositions of Hays, Duhme, Erwin, Pautler, Mathews, Schmidt and Prange who were former owners of, or representatives of former owners of appellant's bonds, and by some 100 letters introduced in evidence. Space will not permit this opinion to set out this testimony at length. It showed conclusively that every bond had been presented to the city for payment when due; that partial payments had been made on bonds; that numerous demands and requests for payments covering years of time, had been made and ignored. It was against the manifest weight of the evidence for the master to hold and the court to confirm that demands were not made or that "the evidence fails to show that said bonds or any of them have ever been presented for payment"; and we so hold.

Demands by personal calls, presentation through banks; by letters; by forwarding bonds by registered mail to the city treasurer, occurred continuously from 1928. Answers by the city treasurer were uniformly evasive and to the effect that there were no funds for payment. Many addresses of former owners as well as of appellant were in the hands of the city treasurer but the city gave no notice, although it promised repeatedly to do so, of any funds available for payment. Paragraph 6 of the decree recites these collected and diverted payments were paid to the city each year in large amounts from July 1, 1927 to February 1936. Under such undisputed evidence we believe the city is liable for interest from time when each respective bond was due and entitled to demand payment. Such interest should be calculated from such bond due date, on moneys theretofore received by the city and which should have been then on hand. *Conway v. City of Chicago,* 237 Ill. 128; *Rothschild v. Village of Calumet Park,* 350 Ill. 330; *Cook v. City of Staunton,* 295 Ill. App. 111, 121–123; *Shade v. City of Taylorville,* 212 Ill. App. 512; *People ex rel. Decker v. City of Park Ridge,* 275 Ill. App. 97. The court erred in allowing interest only from the dates of the last payments made to the city.

Paragraphs 16a to 16e charge that it was the duty of the city, under the statutes of Illinois, to have prevented delinquent properties being forfeited to the State or to have withdrawn them from sale or to have bought them in and secured tax titles and to have tendered the tax titles to the owners of unpaid bonds. Provisions of Illinois statutes relied upon are Ill. Rev. Stat. 1941, ch. 24, par. 84–90 [Jones Ill. Stats. Ann. 21.2316]. Appellant cites and quotes at great length many decisions from foreign courts, textbooks and annotations, to the general effect of diligence required by a trustee. He cites *Donohue v. Village of La Grange,* 183 Ill. App. 222, aff'd 263 Ill. 607; and *Conway v. City of Chicago,* 237 Ill. 128. In these de-

cisions the city had been purchaser at tax sales, and had delivered or tendered tax titles to owners of delinquent bonds. The court held that the city had done its full duty. The argument of appellant is, that the converse is therefore true, that if it has not so purchased at tax sales and made tender of tax titles, the city is liable for the amount of unpaid bonds. Appellee cites many statutory provisions for collection of assessments and remedies for collection, some of which it insists still are available to appellant, to-wit, Ill. Rev. Stat. 1941, ch. 120, pars. 697, 727, 753, 756 [Jones Ill. Stats. Ann. 119.713, 119.743, 119.769, 119.772].

The question, we think, turns upon the provision of the statute which granted the city the right to be buyer at tax sales. That statute states that a city may, pursue one of several remedies for collection, one of which is, purchase at tax sales. In this case it permitted forfeiture to the State. We think discretion is vested in the municipality and that it is not mandatory that it pursue any certain remedy. *People v. Wagemann,* 293 Ill. App. 37; *People v. Anderson,* 380 Ill. 158; *People v. Chicago & Northwestern Ry. Co.,* 308 Ill. 54; *City of Chicago v. Gage,* 268 Ill. 232, 242; *Conway v. City of Chicago,* 237 Ill. 128, 139.

We do not believe the court erred in sustaining motion to strike paragraphs 16a to 16e.

Appellee filed a counterclaim, which, on motion of appellant, was stricken on the ground that the matter should be set up by a plea of payment. Appellee then pleaded in the same words, the same matter in its answer, as a defense of payment. Motion was made to strike same and denied. Appellant contends at great length and cites numerous authorities contending that such matter could not be raised by an answer claiming payment as a special defense but should be raised by counterclaim. We do not believe

appellant is now in position to raise such technical point since he so had the counterclaim stricken at his own instigation. However, we think the matter was properly raised by answer. Ill. Rev. Stat., ch. 110, pars. 167, 168, secs. 43, 44 [Jones Ill. Stats. Ann. 104.043, 104.044]; *House v. John Linn & Co.,* 179 Ill. App. 114; *Judson v. First Trust & Savings Bank of Springfield,* 238 Ill. App. 531; *Thomas v. Turner,* 157 Ill. App. 16.

The defense of payment was, that the city had paid through the course of years after 1927 interest coupons in full and that from property owners, as interest payments, it had received a less amount. The claim was, that the excess was payment on bonds and chargeable as a deduction against appellant from the amount otherwise due on his bonds. The court held that the amounts of such over-payments was $3,848 and that interest on same should also be deducted from amounts otherwise to be due. Accordingly, the court deducted $5,184.06 from the amount it otherwise found due appellant on his bonds. Interest was calculated on such claimed over-payments, from the date of maturity of respective bonds. If the city were entitled to such deductions as payment, such interest should have been considered a payment made upon the principal of a given bond at the date such excess interest was paid out by the city, even though the maturity date of a given bond had not arrived. The court erred in calculating such interest from the maturity date of the bond.

Appellant cites many authorities from foreign jurisdictions and courts of Illinois to the effect that payment is not payment as a matter of law, unless accepted as payment of a given debt, by the one receiving the money. He contends that if coupons were presented and paid in full, the only intention of the city and of the one receiving the payment was to pay and receive interest only, evidenced by the coupon, and not to pay or receive thereby, any payment on

the principal of any bond. He contends that independent suit must be instituted against one receiving an over-payment and not by plea of setoff or counterclaim. He next contends and cites many authorities in support of the point, that, if a person or a municipality voluntarily pays money through no mistake of fact nor by fraud or improper influence or collusion, but through mistake or ignorance of law, that such may not be recovered back; that the same rule applies to municipalities; and that the remedy of the city is against the city treasurer and his bondsmen.

Appellant then cites many authorities and argues to the effect that a setoff or counterclaim can be pleaded only where there is an indebtedness from plaintiff to defendant which might have been recovered in an independent suit; and that a counterclaim is not a defense to the merits but is an assertion of an independent cause of action; and then argues that the special defense of payment in this case was not proven by the evidence.

Appellee points out that such cases cited by appellant were in regard to negotiable instruments; general rules concerning payments by mistake of law; that the bonds are not general obligations of the city; that both principal and interest were payable only from a special fund; that these bonds were not strictly commercial securities; and then asserts that the case of *Galt v. City of Chicago,* 315 Ill. App. 91 is conclusive against all of appellant's contentions.

The burden of proving payment was on appellee. Such proof cannot be made by guess or surmise. In *Galt v. City of Chicago, supra* bonds had been owned by four successive banks. It was stipulated that, during each successive period of such ownership, payments had been made to each bank on the bonds, in excess of the pro rata share of collections applicable to payment thereof and in total amounts in excess of any amount due the plaintiff on a pro rata basis.

Plaintiff filed his complaint in chancery against the city for payment of his bonds and accounting. As in the present case, plaintiff in the *Galt* case, had no notice of such payments, and contended that he was an innocent purchaser for value. The court sustained the defense of payment. In that case a real estate agent, for plaintiff, had checked properties in the neighborhood but had made no inquiry at the office of the comptroller of Chicago as to whether the bonds were being honored. The language of the court in the *Galt* case, will, in the light of facts stated by us hereafter, show a marked distinction, we believe, between the situation in that case and the case at bar. At page 98 the court said, "We think that plaintiffs, about to purchase the special assessment bonds, could without difficulty, have inquired of the city comptroller or other proper official as to the collections made and how the funds had been disbursed, and ascertain whether overpayment had been made on the bonds about to be purchased. This they did not do and we think they were not innocent purchasers for value . . . and it follows that plaintiffs are not entitled to recovery."

In the present case, it is not claimed that payments on the bonds themselves were made to the owners thereof. The evidence in this case is the testimony of one witness for defendant who was a certified public accountant, employed by the city to make an examination of the records for the purpose of being a witness in this case. From his testimony it appears that a number of days were required to check the records and that he was assisted by some other person from his office.

This witness arrived at the conclusion that an overpayment of interest had been made. He found that a certain amount of interest had been paid to the city by property owners. He then made a calculation on a percentage basis, on his own theory that interest

had been paid out and made on a pro rata basis; that interest coupons on appellant's bonds was a certain per cent of interest coupons on all bonds payable from a given instalment, and if equitable distribution had been made, that certain amounts would have been paid on coupons from bonds now owned by appellant. No payment on bonds had been made on such pro rata basis. He test-checked a number of bonds, "as best he could" from the treasurer's disbursement record. That record was not complete. He could not say that all coupons which had been attached to the bonds had been paid. Coupons were not produced. He could not tell from the records which coupons had been paid. During a recess of the hearing from Tuesday to Friday he had further checked records and found dates when some of the coupons had been paid but would need time to furnish dates when the balance were paid. The records did not show to whom any interest had been paid. There was no evidence in the case that any payment of interest was made to any former owner of appellant's bonds. None was ever made to appellant. The most the evidence showed was that in certain cases a record showed a certain amount paid as interest. It did not show from what funds it was paid. There was no proof it was paid from funds received from private property owners to pay principal on bonds. There was no proof that any over-payment of interest was shown by any record as being payment on principal of any bonds. Such, in substance, was the entire testimony of facts appearing of record stated by the accountant.

The evidence showed that when payments had been made on appellant's bonds the amounts were indorsed on the back thereof by the city treasurer. Nothing had ever been indorsed as payment due to any over-payment of interest.

Former banks had owned appellant's bonds and the record contains a great many letters written by former

owners to the treasurer of the city and answers from the treasurer. These letters continued for years asking the situation in regard to hopes of receiving payments, sending the bonds by registered mail for collection and the like. The treasurer constantly wrote excuses for not making payment; that mining conditions were poor; that money had not been paid in; that funds were in a closed bank but which was insured; that older bonds with interest had not yet been paid: that if bonds would be sent to him, he would credit them with the pro rata share and remit a pro rata payment on same, or not to sent bonds because there would not be any funds to pay for a year; that the best he could do would be to pay all coupons and a per cent pro rata on bonds if they would be sent in. Such was the contents of letters and replies covering many years. Every letter showed that the holder expected full payment on the principal of his bond except for payments previously indorsed thereon. No letter of the city treasurer or of any other person made any intimation of the fact that any other charge of payment existed against any bond, other than payments shown indorsed on the back thereof. This series of letters ran from July 1928 to 1936.

In the months of May, June and July 1935, appellant purchased his bonds and the city treasurer had made thirty-three separate payments from 1935 to 1936 in sums from $13 to $25 each and indorsed payments on the back of appellant's bonds. No intimation was made that such indorsed payments and all payments thereon indorsed did not show every payment that had been made on each bond. Furthermore, appellant had owned other bonds which he had sold and on which he had received like payments. Appellant personally called upon the treasurer, presented and demanded payment of his bonds. The treasurer always said that he had no funds to pay same. Appellant purchased his bonds for a valuable consideration. As early as October 1927, appellant's bank had been writ-

ing the city treasurer and received replies that there were no funds and the treasurer solicited opportunity to sell the bonds for the bank. In 1930 appellant wrote the treasurer for information regarding the status of his bonds, for information and recommendations. The answer was that there was a small amount of money in the account to take care of most of the interest coupons. In August the city treasurer requested appellant's bank to send bonds in and said he would distribute the funds in each issue. In 1932 appellant again wrote asking information relative to the status of the bonds and in 1934 asked information as to when and how much additional payments might be expected on these bonds. From the foregoing, it impresses us that the situation in this case is entirely different from that in the case of *Galt v. City of Chicago, supra.* There, nothing was done that would have lead to knowledge of payments. Here, by appellant and former owners of his bonds, diligence was exercised far beyond any that might be called reasonable. The records of the city were so inaccurate that apparently the city itself had no knowledge of such claimed over-payment until, an elaborate investigation was made after this suit was started. We do not believe appellant was called upon to do anything more than he did in regard to investigation concerning his bonds. Had he written and asked the city treasurer how much was paid on his bonds, the answer would probably have been for him to read the payment indorsements made by the treasurer on the back of his bonds.

Consideration of this evidence does not require weighing the veracity of the witness. His statements of fact are not disputed. The evidence was that appellant, C. A. Prange, was an innocent purchaser for value of these bonds. If there was any neglect or deception, it was practiced by the city, itself. If it made over-payments out of interest funds on bond payments, it should have advised the holder of the

bond who presented it numerous times for payments. It should have placed such credit as payment on the back of the bonds which were sent in by registered mail from time to time for indorsement of payments.

To allow the city, at this late date and after the passing of so many years, and under the situation shown in this case, undisputed, to assert against an innocent purchaser for value, payment on bond principal and in addition several thousand dollars of interest, would be a fraud. The city was clearly guilty of laches. This is a court of equity. Estoppel lies against the city. If, under a situation like the undisputed one shown in this case, a buried, forgotten and cancelled defense, even if it existed, could defeat payment of such a municipal bond, investors would not buy such bonds.

The evidence does not support the special defense of payment. Allowance of this defense was against the manifest weight of the evidence and the court erred in deducting the amount with interest thereon claimed overpaid under the name of interest.

The final decree in this case is reversed and said cause is remanded to the circuit court with directions: To overrule the motion to strike paragraphs 13a to 13d as to charges therein that appellee abated and failed to pay assessments levied against itself; to take evidence thereon; and to take further evidence under all paragraphs of said complaint except paragraphs 16a to 16e and except those allegations in said paragraphs 13a to 13d in regard to abatements to private property owners and except on the special plea of payment; and to proceed according to the findings and rulings appearing in this opinion.

*Reversed and remanded, with directions.*